Filed 5/17/16; pub. order 6/10/16 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re E.G., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Appellant, v. K.K. et al., Defendants and Respondents. | G052899 (Super. Ct. No. DP-026121) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gary L. Moorhead, Judge.  Reversed and remanded with directions.

Leon Page, County Counsel, Karen L. Christensen, and Aurelio Torre, Deputy County Counsel, for Plaintiff and Appellant.

Nicole Williams, under appointment by the Court of Appeal, for Defendant and Respondent, K.K.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Respondent, R.G.

Jamie A. Moran, under appointment by the Court of Appeal, for minor.

\*     \*     \*

Orange County Social Services Agency (SSA) challenges the juvenile court's order granting reunification services to the mother of E.G. SSA argued the court should bypass reunification, citing Welfare and Institutions Code section 361.5, subdivision (b)(13). [1] (All statutory references are to the Welf. & Inst. Code unless otherwise stated.)

In rejecting SSA's argument, the court decided drug treatment ordered as the result of a deferred entry of judgment (Pen. Code, § 1000 (PC1000)) is not "prior court-ordered treatment" for purposes of section 361.5, subdivision (b)(13).) But, we find no principled difference between drug treatment ordered pursuant to PC1000 and any other drug treatment ordered by a court during unrelated criminal proceedings.

We reverse the judgment and remand the case for the court to reconsider its ruling in light of our determination PC1000 is "court-ordered treatment" as contemplated by section 361.5, subdivision (b)(13).

## FACTS

*Background, Petition, Reports*

E.G. was born in 2015 while his then 22-year-old mother, K.K. (mother), and 34-year-old father, R.G.,[2] were incarcerated. After his birth, mother arranged to have an unrelated female take E.G. home from the hospital. About two months later, SSA received a welfare report concerning the state of this woman's home. SSA substantiated

---

[1] Minor adopts SSA's statement of facts and arguments.

[2] R.G. did not appeal the order denying him reunification services. However. He submitted a brief and urged the court to affirm the judgment.

2

the report—the home was extremely unsafe and unsanitary—and SSA took E.G. into protective custody.

Shortly thereafter, SSA filed a dependency petition that alleged mother failed to protect and provide for E.G. (§ 300, subds. (b), (g).) According to SSA reports, mother started using methamphetamine in 2008, around the time of her 16th birthday. She was a daily user of methamphetamine until she became pregnant in 2010 with E.G.'s half sibling, B.G. Mother said she stopped using early in her pregnancy with B.G., and she was able to stay away from it for a couple of years. However, in 2012, mother returned to regular methamphetamine use, and B.G. went to live with his father.

In April 2012, mother was arrested for possessing drug paraphernalia. The court ordered her to attend an 18-month deferred entry of judgment program pursuant to PC1000.[3] Mother reported being "ordered to PC1000 three times," and she said that she had enrolled in a program, but failed to attend.

In late 2012, mother was arrested for a probation violation after she missed an appointment with her probation officer. In 2014, she was convicted of evading a peace officer and driving under the influence of alcohol, and the court ordered mother to complete a three-month first offender alcohol treatment program.

By early 2015, mother was pregnant with E.G. and in jail with pending felony charges for possession of fictitious checks, stolen access cards, stolen property, and drugs. Mother later told the social worker she had unknowingly used methamphetamine during the first two or three weeks of her pregnancy with E.G., and she disclaimed any knowledge of the appalling condition of her friend's home. While

---

[3] The court's 2012 minute order states, "As to count(s) 1, entry of judgment is deferred and defendant is to enroll in a Drug Program pursuant to Penal Code 1000. Defendant advised upon successful completion of the requirements of Penal Code 1000, the plea may be withdrawn and charges dismissed." A summarized criminal records clearance from the Bureau of Criminal Identification and Investigation has the following notation: "CRT/DEFER JDGMNT-TRM CRM PROC REINST."

she acknowledged a nearly six-year addiction to methamphetamine, mother said she wanted to resolve her pending criminal charges, complete her GED, and reunify with E.G.

SSA placed E.G. with his maternal grandmother in June 2015, and he seemed to be doing well. Grandmother facilitated weekly supervised visits between E.G. and mother during her incarceration. Mother was happy about E.G.'s placement and expressed the desire to continue regular visitation. She took a parenting class, worked through a parenting handbook, and passed her GED while incarcerated.

*SSA's Recommended Disposition*

SSA recommended the court bypass reunification services, citing section 361.5, subdivision (b)(13). Paraphrasing the statute, the social worker wrote, "the children's mother has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during the three year period immediately prior to the filing of the petition, or has failed or refused to comply with a program of drug o[r] alcohol treatment on two prior occasions."

The social worker also expressed concern at mother's ability to make timely and significant progress on her case plan after her release from jail, and she felt E.G., who was then six months old, was not bonded to mother. SSA recommended adoption as the goal of the case plan.

Mother submitted to the court's jurisdiction based on SSA's reports, but she contested SSA's recommended disposition.

*Contested Disposition Hearing*

At the contested disposition hearing, SSA submitted on its reports and called mother to testify. Mother admitted a long-term addiction to methamphetamine. She admitted use of methamphetamine during her previous pregnancy, but she said her recent use during the first two-to-three weeks of her pregnancy with E.G. only occurred because she was unaware of the pregnancy.

4

SSA asked mother how many times she had been "ordered to do PC1000?" Mother answered, "I wasn't court-ordered. I was actually offered to either do PC1000 or do my time, and I chose to do PC1000, I just failed to enroll, so I ended up doing my time instead." Mother said she knew failing to complete the program would result in the entry of judgment and conviction. As for the three-month alcohol treatment program, mother said she had not enrolled because she was in custody at the time.

Mother further testified her incarceration in protective custody made it difficult to attend classes with the general population. Notwithstanding this limitation, mother completed her GED and a parenting skills workbook. She also attended Narcotics Anonymous and Alcoholics Anonymous meetings. Mother said she had three more months to serve on her various criminal cases, but that she wanted to receive reunification services and participate in a drug treatment program upon her release.

Mother denied being given any referrals to drug treatment or counseling with respect to the PC1000 deferred entry of judgment in 2012, and she denied being ordered to drug treatment since then.

*Argument and Ruling*

SSA argued mother's then seven-year drug habit, her use of drugs during both pregnancies, and her loss of contact with B.G. suggested reunification services should not be ordered. With respect to mother's prior drug treatment, SSA pointed out that mother had been arrested at least five times, and convicted twice, for drug-related offenses. In 2012, she had agreed to the PC1000 program, but she never reported to the program. Instead, she decided to take the conviction and serve a period of incarceration.

County counsel asserted, "The case law specifically states that when a parent faces incarceration by failing to comply with a program, whether or not they say it's voluntary or not, but if there's a threat of incarceration that is tantamount to a court-ordered drug treatment program. That is in *D.B. v. Superior Court* [2009] 171 Cal.App.4th 197.

5

"[¶] . . . [¶]

"Pursuant to the language of PC1000, PC1000 is a drug program. And mother's counsel and father's counsel can argue that PC1000 was not court-ordered. However, again, per the case law when there is a threat of incarceration if they fail to comply with the program they are told to complete, then that is sufficient to constitute a court-ordered drug treatment program for the purposes of (b)(13)."

"[¶] . . . [¶]

"I suspect that there also will be argument that somehow because PC1000 isn't a really good program that the court should just kind of dismiss the fact that that was what mom was given an opportunity to do. I know what the law says, and counsel recited what the law says, that it has to be an approved program. It has to be considered an effective and credible program. The point is that mom had an opportunity, and it wasn't a voluntary opportunity. It was something that the court said here do this or do this. And the fact that she didn't do it, the fact that she didn't take advantage of it, in my view indicates that she resisted treatment.

"I do believe that (b)(13) applies in this case. I don't think there's any argument that she has an extensive history, that it's chronic. And I would view this as resisting treatment."

On the other hand, father's counsel argued, "[SSA has not] provided any evidence to the court except for this minute order that states that this program was offered to mother not as a condition of probation but merely as a deferred entry of judgment and that mother was to comply with it or else a sentence would be imposed. Which she testified that she decided and chose to have her sentence imposed.

"I would ask that the court to look at the language of (b)(13) and the legislative intent behind it is that there are parents who have been chronic users and have been ordered and offered treatment and have not taken advantage of it and have resisted that treatment.

6

"And that just really is not the case here. There's absolutely no evidence that the mother was actually given an opportunity to address these issues."

The court found SSA proved by clear and convincing evidence that mother had an extensive, abusive, and chronic methamphetamine addiction. As the court noted, mother began using methamphetamines when she was a minor at 16, and she was using "up until the delivery of her baby a year ago."

However, in the court's view, SSA failed to prove by clear and convincing evidence that mother had resisted prior court-ordered treatment. The court mentioned mother's PC1000 deferred entry of judgment, but stated, "PC1000 according to my reading of that statute and my experience as a judge in the misdemeanor criminal courts leads me to conclude that PC1000 is a drug program designed to educate first offenders and divert off of their record any judgment for a small or first offense drug issue. There is no doubt under paragraph (c)[4] of . . . PC1000 is something that has to be administered by the county drug program administrator to be credible and effective. But my understanding of PC1000 is that, as I indicated before, it's an education program. My understanding is that defendants go to essentially one class to learn about the harmful effects of drugs. I don't believe that there is any counseling whatsoever involved in that drug program."

"[Section] 361.5 sub[division] (b)(13) is dealing with parents who have an extensive drug problem and have been offered drug treatment, not simply an educational program but drug treatment and they have resisted that.

---

4 Subdivision (c) of PC1000 states all referrals granted by the court "shall be made only to programs that have been certified by the county drug program administrator pursuant to Chapter 1.5 (commencing with Section 1211) of Title 8, or to programs that provide services at no cost to the participant and have been deemed by the court and the county drug program administrator to be credible and effective."

7

"This is a case of first impression. I hope somebody takes it up on appeal because I frankly am not certain and there's no case law that guides the court effectively in this regard. I have reviewed the *D.B.* [*v.*] *Superior Court* authority and I find that deals with separate issues regarding probation or parole violations dealing with court-ordered drug treatment. I've also reviewed the *Randy R.* [*v.*] *Superior Court* authority regarding chronic and extensive drug abuse. I don't need to go into that because I found that the chronic abuse applies.

"But it seems to me that the purpose for family reunification is to reunify parents with their children. We bypass because we have situations where the Legislature has determined that it would basically be a waste of money to offer family reunification if any of the 16 sub[divisions] apply and there isn't a best interest of the child overriding those 16 sub[divisions].

"In this case in 2012 the mother was offered [PC]1000, ended up not completing or enrolling in PC1000 and took her sentence instead. I don't think that the Legislature in enacting the (b)(13) sub[division] considered that PC1000 would be a drug treatment, and I highlight the term treatment, program that would preclude a parent from family reunification.

"Based on the mother's testimony that she would willingly undergo a drug-treatment program at this time and that she is willing to try and beat her drug problem, I am going to order family reunification services for the mother.

"I will note for the record that drug issues in parents, particularly meth, are extremely difficult to beat and it would not be in the best interest of the child if mother cannot overcome her chronic meth addiction. But I think that she deserves a chance at a real drug-treatment program before we terminate reunification services to her."

**DISCUSSION**

*Reunification Services*

Generally, the removal of a child from a parent's custody prompts an order for family reunification services, "if the court determines that the services will benefit the child." (§ 361.5, subd. (a).) There is a statutory presumption in favor of family preservation in juvenile dependency proceedings (§ 361.5, subd. (a)), and family reunification services are an integral part of that process. (*Riverside County Dept. of Public Social Services v. Superior Court* (1999) 71 Cal.App.4th 483, 487; see *In re William B.* (2008) 163 Cal.App.4th 1220, 1227-1228.)

Nevertheless, subdivision (b) of section 361.5 sets out 16 exceptions to the statutory presumption. As one court acknowledged, section 361.5, subdivision (b) is the legislative acknowledgement "that it may be fruitless to provide reunification services under certain circumstances." (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 478.)

As pertinent here, section 361.5, subdivision (b)(13) states, "[r]eunification services need not be provided . . . when the court finds, by clear and convincing evidence," (1) the child's parent "has a history of extensive, abusive, and chronic use of drugs or alcohol," and (2) the parent "has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition . . . ."

The court found SSA proved by clear and convincing evidence mother had a history of chronic methamphetamine abuse. However, the court found SSA failed to prove mother had resisted prior court-ordered treatment. The court concluded the treatment previously ordered under the PC1000 deferred entry of judgment program was not "court-ordered treatment" within the meaning of section 361.5, subdivision (b)(13).

Because this presents a question of statutory construction, we review the court's interpretation of section 361.5, subdivision (b)(13) and PC1000 de novo, and apply familiar rules of statutory construction. (*People v. Trask* (2010) 191 Cal.App.4th 387, 394 (*Trask*).)

9

"'When construing a statute, a court must first "examine the words at issue to determine whether their meaning is ambiguous." [Citation.] If statutory law is ""'clear and unambiguous there is no need for construction, and courts should not indulge in it."'" [Citations.]' [Citation.]" ""'We construe the words of a statute in context, and harmonize the various parts of an enactment by considering the provision at issue in the context of the statutory framework as a whole. [Citations.]" [Citation.]' [Citation.]" (*Trask*, *supra*, 191 Cal.App.4th at p. 394.)

This is not the first time a parent in dependency proceedings has questioned the scope of section 361.5, subdivision (b)(13)'s reference to "prior court-ordered treatment." In *D.B.*, *supra*, 171 Cal.App.4th 197, the juvenile court denied reunification services after finding the father demonstrated resistance to ""court-ordered treatment"' by having a drug relapse and violating a condition of parole. (*Id*. at p. 202.) The father unsuccessfully argued the term "court-ordered treatment" did not extend to treatment conditions imposed in conjunction with parole. (*Id*. at p. 203.)

The *D.B.* court reasoned, "Construing the law as father suggests would produce an absurd consequence. We begin with the premise that a parent who has failed to participate in drug or alcohol treatment ordered directly by the court as a condition of probation in a criminal case may be denied services under section 361.5, subdivision (b)(13) if the other criteria of that provision are met. [Citation.] There is no meaningful distinction between treatment ordered as a condition of probation and treatment ordered as a condition of parole for purposes of determining whether a parent's failure to comply signifies a substance abuse problem so intractable that the provision of reunification services would be a waste of time. In both situations, the parent faces incarceration as a consequence and has ample incentive to comply with the treatment condition imposed." (*D.B.*, *supra*, 171 Cal.App.4th at pp. 203-204.) The court concluded the statutory language contemplated "treatment ordered as a part of unrelated criminal matters," as well as treatment ordered by a juvenile court. (*Id*. at p. 204, fn. 3.)

10

We agree with the reasoning in *D.B.* and conclude treatment ordered under PC1000 is "prior court-ordered treatment" for purposes of section 361.5, subdivision (b)(13). Under PC1000, first-time drug offenders are permitted to bypass the normal criminal process and enter a drug treatment program. (*People v. Descano* (2016) 245 Cal.App.4th 175, 182-183; *Terry v. Superior Court* (1999) 73 Cal.App.4th 661, 663-664.) PC1000 authorizes "the courts to 'divert' from the normal criminal process persons who are formally charged with first-time possession of drugs . . . and are found to be suitable for treatment and rehabilitation at the local level." (*People v. Superior Court* (*On Tai Ho*) (1974) 11 Cal.3d 59, 61-62.)

Moreover, any referrals under PC1000 must be made "to programs that have been certified by the county drug program administrator pursuant to Chapter 1.5 (commencing with Section 1211) of Title 8, or to programs that provide services at no cost to the participant and have been deemed by the court and the county drug program administrator to be credible and effective." (§ 1000, subd. (c).)

In turn, Penal Code section 1211 provides, "the county drug program administrator in each county, in consultation with representatives of the court and the county probation department, shall establish minimum requirements, criteria, and fees for the successful completion of drug diversion programs which shall be approved by the county board of supervisors . . . ." These minimum requirements include, (1) an assessment of each divertee's social, economic, and family background, education vocational achievements, criminal history, medical history, drug history, and prior treatment, (2) "[a] minimum of 20 hours of either effective education or counseling or any combination of both for each divertee," (3) an exit conference, and (4) fee exceptions. (Pen. Code, § 1211, subd. (a)(1)(A)-(F).) And, each county must have "[g]uidelines and criteria for education and treatment services, including standards of services which may include lectures, classes, group discussions, and individual counseling." (Pen. Code, § 1211, subd. (c)(1).)

11

Satisfactory performance during the PC 1000 deferral period results in the criminal charge being dismissed, and the arrest is deemed to have never occurred. (Pen. Code, §§ 1000.3,1000.4, subd. (a).) Unsatisfactory performance, on the other hand, produces a conviction, or convictions, and the entry of judgment. (Pen. Code, § 1000.3.)

In sum, for these purposes treatment ordered by a court under PC1000 is analogous to treatment ordered by a court pursuant to parole or a grant of probation. In all three circumstances, it arises in an unrelated criminal proceeding, carries the risk of jail time for failure to cooperate, and "is by no means voluntary." (*D.B.*, *supra*, 171 Cal.App.4th at p. 205.) This is true even though PC1000 may be an entry level treatment program and the treatment details may vary from county to county. (Pen. Code, § 1211.)

## DISPOSITION

The judgment is reversed and the matter remanded for the court to determine whether mother "resisted" (§ 361.5, subd. (b)) PC1000 treatment and, whether reunification services for mother will "benefit" (§ 361.5, subd. (a)) E.G.


THOMPSON, J.

WE CONCUR:


MOORE, ACTING P. J.


IKOLA, J.


12

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re E.G., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Appellant,<br><br>      v.<br><br>K.K. et al.,<br><br>    Defendants and Respondents. | G052899<br><br>(Super. Ct. No. DP-026121)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

        Appellant requested that our unpublished opinion, filed on May 17, 2016, be certified for publication. It appears that our opinion meets the standards set forth in

California Rules of Court, rule 8.1105(c).  The request for publication is GRANTED. The opinion is ordered published in the Official Reports.


                                                                THOMPSON, J.


WE CONCUR:




MOORE, ACTING P. J.




IKOLA, J.