Filed 8/17/16

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Trinity)

----

| | |
|---|---|
| In re S.N., a Person Coming Under the Juvenile Court Law. | C081228 |
| TRINITY COUNTY HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.N.,<br><br>Defendant and Appellant. | (Super. Ct. No. 15JU025) |

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of Part II.

1

APPEAL from a judgment of the Superior Court of Trinity County, Elizabeth Johnson, Judge.  Affirmed.

Michele Anne Cella, under appointment by the Court of Appeal, for Defendant and Appellant.

Prentice, Long & Epperson and Margaret E. Long for Plaintiff and Respondent.

C.N., mother of minor S.N., appeals from the juvenile court's orders taking jurisdiction and later terminating jurisdiction after awarding custody to father at disposition.  She contends the court failed to obtain a valid waiver of her right to a contested jurisdictional hearing.  Mother further contends that trial counsel rendered ineffective assistance of counsel at the jurisdictional hearing.

In the published portion of our opinion, we conclude the court failed to obtain a valid waiver.  Because we find the juvenile court's error harmless beyond a reasonable doubt, we shall affirm the juvenile court's orders.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2015, the Trinity County Department of Health and Human Services (Department) filed a juvenile dependency petition (Welf. & Inst. Code, § 300)[1] as to then eight-year-old S.N.  The petition alleged that mother "failed to protect [S.N.] in that she drove under the influence of alcohol with [S.N.] in the vehicle, resulting in a single car collision into the embankment, causing [S.N.] to suffer serious physical and emotional harm."  The petition further alleged that mother "failed to provide [S.N.] with adequate medical care in that [S.N.] had ligature marks and abrasions on her chest as a result of a vehicle accident which were not immediately treated due to the mother telling [S.N.] she was not 'hurt enough' to require medical care."  According to the Department, "mother's failure to provide adequate medical care placed [S.N.] at substantial risk of suffering

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

serious physical and emotional harm." The petition also asserted that mother's conduct was due, in part, to her substance abuse, and that mother had a history of substance abuse.

The detention report recommended that S.N. be detained and remain outside the home pending a jurisdiction hearing because S.N. could not be safely maintained in mother's care. The report alleged that a "confidential reporting party (RP) stated that on [August 27, 2015], [mother] was driving erratically on Highway 3 towards Coffee Creek Elementary School. A resident of Coffee Creek, Greg Amos, was behind her and took photos of her car crossing the yellow line on multiple occasions. [Amos] became concerned and followed the driver to Coffee Creek Elementary School, where he approached the driver and asked if she was ok. He stated the driver appeared disheveled and 'out of it.' He asked her if she was under the influence and did not receive a clear response, so he called 911. He asked dispatchers to call the school because he believed the driver was picking up a child from the school."[2]

The report continued that "[t]he RP stated that dispatch never called, and the driver, [mother], picked up her daughter and began driving towards Weaverville, when she wrecked her vehicle near Cedar Stock Marina on Highway 3. An oncoming car stopped to help the family and reported [S.N.] jumping out of the car stating, 'My mom says we don't have any injuries, so no EMT is needed. My mom says if the EMT comes then law enforcement will come.' The man gave the two a ride home, and hours later

---

[2] Amos, a firefighter, reported to the social worker that he observed mother tailgating two vehicles, driving erratically, crossing the double yellow line, and swerving into the dirt. According to Amos, mother was clearly under the influence of methamphetamine. In support of this assertion, Amos noted that he was well aware of the signs and symptoms of methamphetamine use, as he had fired many employees that displayed the same signs and symptoms and subsequently tested positive for methamphetamine. Amos stated that he attempted to talk to mother but she was too "spun" to speak with him.

when authorities discovered the wreck, they made contact with [mother] and [S.N.] at their home . . . ."**3**

The detention report further alleged that the RP observed bruises and ligature marks across S.N.'s chest during physical education class at a swimming pool. S.N. spoke to the social worker and confirmed that the bruises and marks on her chest were from the car accident, and said that " '[m]om gets in accidents all the time.' " S.N. also confirmed that mother had told her not to tell bystanders she needed an ambulance because the police would come. According to S.N., she lied to the police when she said there was a deer in the road so her mother would not get arrested.**4** When S.N. was asked by the social worker why she thought her mother would get arrested, S.N. said that her mother had told her she was drunk prior to the accident. S.N. asked the social worker not to tell her mother that she had told the truth because she was afraid that her mother would " 'kill her.' "

At the detention hearing, the juvenile court found it appropriate to temporarily detain S.N. The court then continued the hearing to allow mother an opportunity to appear with her retained counsel. However, because mother did not appear at the next hearing with retained counsel, the juvenile court appointed counsel to represent her. At

---

**3** Nick Watkins spoke with the social worker and reported witnessing the mother driving recklessly immediately before the accident, including crossing the double yellow line on blind corners. He stated that he observed the accident and stopped to assist mother and S.N. Watkins reported that S.N. jumped out of the car and begged him not to call an ambulance because " 'mommy says I'm not hurt enough to need an ambulance, cause if the ambulance comes, other people will come,' " meaning " 'cops and stuff.' " According to Watkins, mother got out of the car and yelled, " 'I'm not supposed to be driving, I wish someone here would say they were driving the car.' " He further stated that mother told him, " 'Please don't call 911, just call a tow truck, we just need to move the car.' "

**4** Mother denied being drunk or under the influence of any drug at the time of the accident. She claimed that there was a deer in the road that caused the wreck.

4

mother's request, a contested jurisdictional hearing was scheduled. The juvenile court advised mother that she could challenge the allegations in the petition at the jurisdictional hearing. The court also explained that she would have the right to testify, call witnesses, and cross-examine witnesses. In response to mother's suggestion that she had evidence demonstrating that the allegations in the petition were not true, including traffic collision reports saying she was not drinking on the date of the accident and "ambulance reports," the court advised mother that she could give these reports to her attorney and present them at the jurisdictional hearing. At the conclusion of the hearing, the court ordered S.N. detained with visitation for mother and the presumed father, and scheduled a combined jurisdictional and dispositional hearing.

The jurisdiction/disposition report, which was based on the same allegations set forth in the detention report and the additional allegations that mother had tested positive for marijuana seven times and alcohol three times since the date of S.N.'s detention, recommended that the petition be sustained, S.N. be found to come within section 300, subdivision (b), and S.N. be declared a dependent. It also recommended that jurisdiction be terminated and joint legal custody awarded to both parents, with primary physical custody to the father. In making these recommendations, the report stated that the Department was gravely concerned for S.N.'s safety with mother due to the extreme risk mother took with S.N.'s life in driving under the influence and in encouraging S.N. to lie to law enforcement to conceal her crime. The report further stated that mother lacked insight into her complete lack of judgment and care for S.N.'s safety, as demonstrated by her actions, her failure to admit wrongdoing, and her continued consumption of alcohol. The report also noted that father had demonstrated a willingness to safely and adequately care for S.N., and that there was no indication that S.N. was in need of further protection from the juvenile court.

5

At the outset of the jurisdictional/dispositional hearing, the juvenile court asked mother and father whether they had received a copy of the current report, and whether counsel had an opportunity to go over it with their clients. In response, mother's counsel stated, "No, not adequately . . . . This was just e-mailed to me yesterday. I haven't had a chance to talk to the mother about it. It's a recommendation that I had no previous knowledge or reason to expect, and it is something I need to talk to the mother about. The initial indication today is that mother's primary issue may be her contact if [S.N.] is placed with dad. So it may not be contested, but I'm not comfortable making a[] final decision on that today until I've had a chance to sit down with mom in my office [¶] . . . [¶] and go over the recommendation, as well as the meaning of that, and put in place, if mother does end up submitting, some form of ongoing contact." Mother's counsel further stated that he did not have a waiver form but would be willing to submit on jurisdiction if the issue of placement and dismissal of the case was "put out," because "[t]hat's the issue I'm concerned about."

Following a reading of the allegations in the petition, the juvenile court stated that it believed that all parties were prepared to submit on jurisdiction. The attorneys for the Department and father confirmed that they were prepared to submit on jurisdiction, while mother's counsel stated, "[W]ithout admitting the truthfulness of the allegation, I will be submitting." The juvenile court then sustained the petition based on the facts in the jurisdiction/disposition report, and found, among other things, that "notice of the jurisdiction hearing was in accordance with the law . . . and that the parents were previously advised regarding their constitutional rights, including the privilege against self-incrimination, the rights to cross-examine and confront witnesses and to present evidence." The court also found that there would be a substantial risk of detriment if S.N. were returned to the mother's care. The dispositional hearing was continued, and mother agreed to allow S.N. to be temporarily placed with father until that hearing.

6

Prior to the dispositional hearing, mother filed a substitution of attorney, a motion to disqualify the juvenile court judge, and a written response to the jurisdiction/disposition report. In her response to the report, mother argued that the Department could not prove that she drove under the influence of alcohol, failed to provide S.N. adequate medical care, had a substance abuse problem, or S.N. had suffered, or there was a substantial risk that S.N. would suffer, serious physical harm or illness from her inability to provide regular care for S.N. due to her alleged substance abuse problem. In support of her written response, mother filed a traffic collision report and a pre-hospital care report prepared by Trinity County Life Support (ambulance report).

At the contested dispositional hearing, the juvenile court denied mother's motion to disqualify as untimely, denied mother's request to reconsider the jurisdictional findings in light of the collision and ambulance reports, and denied mother's request for a continuance. In denying mother's request for reconsideration, the juvenile court stated that the reports could have been submitted at the jurisdictional hearing, and that "plenty of information" was submitted to support the granting of the petition. Aside from the jurisdiction/disposition report, no other evidence was admitted at the hearing, and there was no testimony.

At the conclusion of the hearing, the juvenile court adjudged S.N. a person described under section 300, subdivision (b) and a dependent of the court and found that: the circumstances justifying removal from mother were based on clear and convincing evidence as described in the jurisdiction/disposition report; removal from the mother was appropriate under section 361, subdivision (c)(1); reasonable efforts were made to prevent or eliminate the need for S.N.'s removal as documented in the jurisdiction/disposition report; a continuance in the home was contrary to S.N.'s welfare as set forth in the jurisdiction/disposition report, including the handling of the accident, the covering up of S.N.'s physical condition, and the delay in obtaining medical care for S.N.; termination of jurisdiction was warranted because it was in the best interests of S.N.

7

to be placed with father; and joint legal custody was appropriate, with primary physical custody to father.

Mother filed a timely notice of appeal.

## DISCUSSION

### I

*The Failure to Obtain an Explicit Waiver of Rights*

Mother contends the juvenile court violated her due process rights when it failed to obtain a valid waiver of her right to a contested jurisdictional hearing. We agree. Although the court advised mother at the *detention* hearing of the rights she would have at the upcoming jurisdictional hearing, the court did not properly advise mother at the jurisdictional hearing itself before accepting the parties' submission.

If a parent denies the allegations in a section 300 petition, the juvenile court must hold a contested hearing on them. (California Rules of Court, rule 5.684(a).)[5] But even if the parent does not contest the allegations, the court must advise the parent of the parent's rights to receive a hearing on the issues raised by the petition, to assert any privilege against self-incrimination, to confront and cross-examine witnesses, to compel witnesses' attendance, and to have the child returned if the court finds that the child does not come within the jurisdiction of the juvenile court under section 300. (Rule 5.682(b).) If, after being so advised, the parent wishes to admit the allegations or enter a plea of no contest (see Rule 5.682(e)), the court must find and state on the record that it is satisfied that the parent understands the nature of the allegations and the direct consequences of the admission, and understands and knowingly and intelligently waives the rights in rule 5.682(b). (Rule 5.682(c), (f).) Here, the court did not follow these procedures.

---

[5] Further undesignated references to rules are to the California Rules of Court.

Because the due process rights protected by these rules implicate a parent's fundamental right to care for and have custody of his or her child, it is error of constitutional dimension to accept a waiver of the right to a contested jurisdictional hearing based only on counsel's representations. (*In re Monique T.* (1992) 2 Cal.App.4th 1372, 1377; see *In re Patricia T.* (2001) 91 Cal.App.4th 400, 404.) Where such error occurred, we may affirm only if the error is harmless beyond a reasonable doubt. (*In re Monique T.,* at p. 1377, citing *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711].)

Here, we conclude the juvenile court's failure to obtain a personal waiver from mother was harmless beyond a reasonable doubt. The evidence supporting a finding of jurisdiction was overwhelming. There were two eyewitnesses to mother's reckless driving and odd behavior, one of whom photographed her poor driving. Further, S.N. informed the social worker that mother had admitted to being drunk prior to the accident, and that mother had told her not to tell anyone she needed an ambulance because the police would come. S.N. also informed the social worker that she had lied to the police so that mother would not get arrested. In addition, the record discloses that mother and S.N. left the scene of the accident without seeking medical care despite the visible injuries to S.N. The record also discloses that mother has a history of substance abuse, and that she tested positive for marijuana and alcohol numerous times after S.N. was detained. We are convinced that the outcome of the jurisdictional hearing would have been the same regardless of the error. Under all the circumstances, the juvenile court's error was harmless.

Contrary to mother's contention, the traffic collision and ambulance reports do not demonstrate that she could have successfully contested jurisdiction. The collision report states that the vehicle mother was driving sustained major front end damage, including a crushed front bumper, crushed front fenders, a shattered windshield, and a crumpled hood. The ambulance report indicates that both front air bags were deployed. According

9

to mother, she was driving approximately 65 miles per hour before she lost control of her vehicle and crashed into the embankment.

The collision report indicates that the investigating officer spoke with mother at her residence shortly after the accident and checked the box on the report indicating that mother had *not* been drinking alcohol. But the record does not disclose how the officer reached that conclusion. There is no evidence in the record suggesting that any test was conducted to confirm whether mother was intoxicated or under the influence of any drug at the time of the accident. Moreover, the evidence in the record, including S.N.'s report to the social worker and eyewitness reports, support a finding that mother was under the influence of alcohol and/or drugs at the time of the accident. Further, the ambulance report confirms that mother did not seek immediate medical attention for S.N.'s injuries. The ambulance did not respond to S.N.'s residence based on a phone call from mother. Instead, the ambulance responded to the residence based on an investigation by the police. In short, there is nothing in the reports that demonstrate that the facts before the juvenile court were insufficient to justify a jurisdiction finding.

II

*Ineffective Assistance of Counsel*

Mother next contends trial counsel rendered ineffective assistance of counsel at the jurisdictional hearing. Mother argues that there simply can be no satisfactory explanation for her attorney's conduct in submitting on jurisdiction before reviewing the detention and jurisdiction reports with her, which led to counsel's failure to introduce the exculpatory traffic collision and ambulance reports at the jurisdictional hearing.

A claim of ineffective assistance of counsel may be reviewed on direct appeal when there is no satisfactory explanation for trial counsel's act or failure to act. (*In re N.M.* (2008) 161 Cal.App.4th 253, 270.) To prevail on such a claim, mother must demonstrate: "(1) counsel's representation fell below an objective standard of reasonableness; and (2) the deficiency resulted in demonstrable prejudice." (*In re*

10

*Kristen B.* (2008) 163 Cal.App.4th 1535, 1540.) We must affirm the judgment unless the record "affirmatively establishes counsel had no rational tactical purpose for the challenged act or omission . . . ." (*Id.* at p. 1541.) In addition, we may reject mother's claim if she cannot show it is reasonably probable the result would have been more favorable to her but for trial counsel's alleged failings. (*In re N.M.,* at p. 270.) Thus, if mother fails to demonstrate prejudice, we need not examine whether her counsel's performance was deficient. (See *ibid.*)

As we explained above, even if mother had contested the allegations in the petition at the jurisdictional hearing, the ultimate result of the hearing would have been the same. Accordingly, even were we to assume trial counsel's performance fell below an objective standard of reasonableness, mother's claim of ineffective assistance fails because there has been no demonstrable prejudice. (See *In re Kristen B., supra*, 163 Cal.App.4th at p. 1540.)

### DISPOSITION

The orders of the juvenile court are affirmed.

    /s/
Duarte, J.


We concur:


    /s/
Butz, Acting P. J.



    /s/
Murray, J.

11