Filed 7/12/21  In re M.R. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re M.R. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B308711 (Super. Ct. Nos. 20JV00147, 20JV00148) (Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD WELFARE SERVICES,  Plaintiff and Respondent,  v.  S.H. et al.,  Defendants and Appellants. | |

S.H. (Mother) and S.R. (Father) appeal from the juvenile court's order terminating their parental rights as to their son M.R. and daughter E.R. (the children).  (Welf. & Inst. Code,

1

§ 366.26.)[1] They contend: (1) their failure to file a petition for extraordinary writ does not preclude this appeal, and (2) their counsel rendered ineffective assistance. Father further contends his parental rights were terminated without due process of law. We affirm as to Mother and reverse as to Father.

## FACTUAL AND PROCEDURAL BACKGROUND
### *Facts regarding Mother*

Mother began using methamphetamine at the age of 12. In approximately 2018, she began using heroin daily. She participated in several substance abuse programs but admitted that she continued to use methamphetamine on weekends while enrolled in programs. Since age 12, her longest period of sobriety was 13 months (January 2015 to February 2016).

In 2013, Mother tested positive for methamphetamine during two prenatal visits and during delivery of M.R. The department opened a Voluntary Family Maintenance (VFM) case. During the VFM, mother was referred to a residential program. She was on probation for driving under the influence and reported she was enrolled for treatment at Central Coast Headway and at Zona Seca. She later reported she was no longer willing to enter residential treatment.

Later that year, when Mother was arrested for firearm and narcotics violations, the VFM was terminated because both parents were incarcerated and neither was available for services. The criminal court placed Mother on drug diversion. She did not successfully complete the program and criminal proceedings were reinstated.

Another VFM was opened in 2014 because, while

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

drunk, Mother dropped four-month-old E.R. several times. She was convicted of willful child cruelty. Mother again participated in a substance abuse program.

In December 2019, as a condition of pretrial release for first degree residential burglary, Mother agreed to attend Alcoholics Anonymous twice a week or enroll in Coast Valley treatment. The criminal court later ordered her to complete the Coast Valley program. Mother felt the program "was too much for her then" and instead admitted herself to a detox program.

In January 2020, the court ordered her to test at the probation department that day or the next day. Nine days later, the probation department advised her that she was in violation of her pretrial supervision and was required to come to court in five days. She failed to appear and the court issued a bench warrant. In March 2020, the criminal court noted that she was in detox, and ordered her to remain in the program. She completed the detox program March 10, but twelve days later, she overdosed on heroin while the children were in the room. She was taken to the emergency room, leaving the children with an unidentified male. The children were placed with their maternal grandparents.

The detention report prepared for the March 27 hearing states, "The mother was referred to call ACCESS and understands she would best benefit from a residential program." Mother told her probation officer that she completed screening through the ACCESS line, which referred her to Recovery Way. But ACCESS and Recovery Way denied that a referral had been made. The probation officer stated that "mother was not in compliance with the terms of her probation and she was expected to be in drug treatment." Mother asked the probation officer if she could attend Coast Valley outpatient treatment instead of

3

residential treatment.  The probation officer said she was required to enroll in residential treatment as recommended by ACCESS.

In April, a manager at Recovery Way stated that she had not received a referral from ACCESS for Mother, but Mother had called and said she had been referred for detox.  Recovery Way did not have detox beds available and told Mother she would not be appropriate for the residential program until she completed opiate withdrawal at detox.  Mother enrolled in outpatient services at Coast Valley in May, and was referred to a doctor for medication assisted treatment.

Mother had an appointment in May to enter residential treatment at Recovery Way but missed her intake appointment.  She enrolled thirteen days later.  At intake, she tested positive for heroin and methamphetamine, and admitted using those drugs the previous two days.

Between March and June, Mother visited the children five times on the telephone and five times via video, and missed four scheduled visits.  She visited in-person five times in August and three times in September.  The Court Appointed Special Advocate described Mother's visitation as "very sporadic."

***Facts regarding Father***

In 2014, Father was charged with dissuading a witness by force or threat of force (Pen. Code, § 136.1, subd. (c)(1)) and other crimes.  He was sentenced to 16 years in state prison.  At the time sentence was imposed, M.R. was two years old and E.R. was 15 months old.

Mother told the department she was "in [a] relationship with the father when he was sentenced to prison; however, their relationship ended shortly thereafter and she has

4

not spoken to him in nearly six years."  The jurisdiction/disposition report stated that the children "do not have an established relationship" with Father.

### *Juvenile court proceedings*

A dependency petition was filed in March 2020, pursuant to section 300, subdivisions (b)(1) (failure to protect), (g) (Father incarcerated without provision for support) and (j) (sibling abused or neglected).  Father was listed on the children's birth certificates, which were attached to the detention and section 366.26 reports.

Mother appeared at the detention hearing.  Father was not given notice of the hearing and did not appear.  Mother confirmed that Father was "the alleged father," but the court did not make further inquiry regarding parenthood.

Attorney Jessica Martinez was appointed for Mother.  Attorney Erin Moore was appointed for Father as an "alleged father."  The court found a prima facie case that the children came within section 300.

At the request of Mother's counsel, the court ordered that she be provided services, including substance abuse treatment.  Mother was granted a minimum of four hours per week of monitored visitation.  All visitation was virtual due to COVID-19.  Father's counsel said nothing at the hearing, and visitation for Father was not discussed.

The court ordered the prison to produce Father for a May 21 jurisdiction/disposition hearing.  The department mailed notice of the hearing to the prison addressed to Father; a certified mail receipt was signed by an "Agent."  The department also sent letters requesting that Father contact them.  On May 6, Father returned one of the letters to the department and wrote on the

back that he wished to be present at the hearing and "take the steps necessary to be custodial parent."

Neither parent appeared for the initial jurisdiction/disposition hearing. Father was not transported due to COVID-19. The court noted that Father was the "alleged father."

After a pretrial conference that neither parent attended, the court continued the case for a jurisdiction/disposition hearing. All counsel waived notice.

Mother but not Father appeared at the hearing. The department announced a "settlement" with Mother: she would rest on jurisdiction and disposition and would receive visits four hours a month supervised by the maternal grandmother, or if grandmother was unavailable, two hours a month supervised by the department. Counsel for both Mother and Father rested on jurisdiction and disposition.

The court's written findings state that the parents knowingly and intelligently waived their right to a court trial, their privilege against self-incrimination, and their rights to confront and cross-examine witnesses, subpoena witnesses, and present evidence, and that they understood the nature of the allegations and possible consequences of their submission. However, no such advisements or waivers occurred in the oral proceedings, and the record does not include a written waiver of rights.

The court received all reports into evidence. The court sustained the petition. (§ 300, subds. (b), (g) & (j).) The court bypassed reunification services for Mother based on her prior resistance to court-ordered drug or alcohol treatment. (§ 361.5, subd. (b)(13).) The court set a hearing for October 15 to

6

select a permanent plan (§ 366.26).  All counsel waived notice.

The clerk mailed Father a notice advising him that the court set a permanent plan hearing pursuant to section 366.26, and if he wished to appeal that ruling, he must file a notice of intent to file a writ petition, and must file a writ petition within 10 days of filing the record.  A blank writ petition and notice of intent were enclosed.

Neither parent filed a writ petition.  The court issued an order that the prison produce Father for the 366.26 hearing.  The 366.26 report included a letter from Father in which he requested prepaid phone calls to the grandmother and the children, discussed his pending application for early release from prison pursuant to Proposition 57, and stated he would be a great father when released on parole.

At the hearing on October 15, Mother was present with counsel.  Father was not present but was represented by counsel, who stated she had sent him letters.  The court ordered that offers of proof be filed.  Neither parent did so.

Both parents appeared at a pretrial conference on November 5.  Father's counsel was not present, and Mother's attorney appeared for both parents.  Counsel noted that Father, who "remains alleged," opposed terminating his parental rights, but rested on behalf of both parents.  The court terminated their parental rights and found adoption to be the children's permanent plan.

## DISCUSSION

### *Writ requirement*

Ordinarily, an order setting a 366.26 hearing, "or any findings subsumed therein, [cannot] be appealed unless earlier writ review of any substantive claim was first sought and

7

denied." (*In re Zeth S.* (2003) 31 Cal.4th 396, 413; § 366.26, subd. (*l*)(1); Cal. Rules of Court, rules 5.590(b)[2], 5.695(g)(6)-(g)(10), 8.450, 8.452.)  Because the 366.26 referral was made at the disposition hearing, the writ requirement applies to all orders made at that hearing, including jurisdictional findings and denial of reunification services.  (*Anthony D. v. Superior Court* (1998) 63 Cal.App.4th 149, 153, 156; *In re Tabitha W.* (2006) 143 Cal.App.4th 811, 817.)  Failure to file a writ ordinarily forfeits the right to claim ineffective assistance of counsel at earlier stages of the proceedings.  (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150-1151 (*Meranda P.*).)  But failure to file a writ petition does not preclude appeal of the findings and orders made at the 366.26 hearing itself.  (*Joyce G. v. Superior Court* (1995) 38 Cal.App.4th 1501, 1507 & fn. 3.)

Forfeiture pursuant to *Meranda P.* is not enforced if doing so would violate due process.  (*In re Janee J.* (1999) 74 Cal.App.4th 198, 208 (*Janee J.*).)  The writ requirement may be excused for "some defect that fundamentally undermined the statutory scheme so that the parent would have been kept from availing himself or herself of the protections afforded by the scheme as a whole."  (*Ibid.*)  The "defects must go beyond mere errors that might have been held reversible."  (*Id.* at p. 209.)

### *Forfeiture regarding Mother*

Mother claims her compliance with the writ requirement is excused because her counsel provided ineffective assistance.  We disagree.

The court's failure to obtain a personal waiver of a contested jurisdictional hearing was error.  When Mother's

---

[2] Rule references are to the California Rules of Court.

counsel "rest[ed]" on jurisdiction and disposition based on the reports, she was "submit[ting] the jurisdictional determination to the court based on the information provided to the court." (Rule 5.682(d).) A submission requires the parent knowingly and intelligently waive their right to a court trial, their privilege against self-incrimination, and their rights to confront and cross-examine witnesses, subpoena witnesses, and present evidence. (Rule 5.682(b) & (e)(3).) The waiver must be personal and cannot be "based only on counsel's representations." (*In re S.N.* (2016) 2 Cal.App.5th 665, 672.) A juvenile court's failure to obtain a valid waiver of constitutional rights before the parent submits on jurisdiction violates due process and is reversible error unless it was harmless beyond a reasonable doubt. (*Id.* at pp. 671-672.)[3]

The court's failure to obtain Mother's personal waiver of a contested jurisdictional hearing was harmless beyond a reasonable doubt because "[t]he evidence supporting a finding of jurisdiction was overwhelming." (*In re S.N.*, *supra*, 2 Cal.App.5th at p. 672.) The evidence established that Mother's substance abuse resulted in delivery of M.R. while Mother was positive for methamphetamine. She dropped infant E.R. repeatedly when she was drunk, was convicted of cruelty to a child, overdosed on heroin in the children's presence, and left the children in the care

---

[3] The court's written orders state that the required waivers and findings were made. But they do not appear in the oral record of the hearing, and the record does not include a written waiver of rights (e.g., Judicial Council Forms, form JV-190). Under these circumstances, the absence of waivers in the reporter's transcript or in a waiver form "'is entitled to greater credence'" and prevails over the court's written findings. (*People v. Smith* (1983) 33 Cal.3d 596, 599.)

of a stranger. Based on the evidence, counsel's decision to rest as to jurisdiction and disposition did not deny Mother "the protections afforded by the scheme as a whole." (*Janee J.*, *supra*, 74 Cal.App.4th at p. 208.)

Nor was the juvenile court's decision to bypass reunification services for Mother a jurisdictional defect. (§ 361.5, subd. (b)(13).) The bypass provision applies where, as here, the parent failed to comply with an order for treatment in a criminal case. (*In re E.G.* (2016) 247 Cal.App.4th 1417, 1427 [treatment ordered as condition of diversion]; *D.B. v. Superior Court* (2009) 171 Cal.App.4th 197, 204 [treatment ordered as parole condition].) Resistance to treatment may be based on a single failure within three years. (*In re B.E.* (2020) 46 Cal.App.5th 932, 938.) Mother continued to use narcotics during and immediately after completion of programs, and had been unable to maintain sobriety for any significant period since 2016. Whether Mother resisted treatment is not a jurisdictional issue, but a question of fact reviewed on appeal for substantial evidence. (*In re T.G.* (2015) 242 Cal.App.4th 976, 987.)

Mother relies on *In re B.E.*, in which the Fourth District, Division 3, "break[s] with the line of cases that have interpreted subdivision (b)(13) as encompassing passive resistance." (*In re B.E.*, *supra*, 46 Cal.App.5th at p. 934.) The court held that the provision applies only to "active resistance" where the parent refuses to attend or participate in a program. (*Id.* at pp. 940-941.) In *In re Brian M.* (2000) 82 Cal.App.4th 1398, 1402, the same division previously held that "[p]roof may come . . . in the form of resumption of regular drug use after a period of sobriety." *Brian M.* was followed by the First District, Division 5, in *D.B. v. Superior Court, supra,* 171 Cal.App.4th at p.

10

206, and the Second District, Division 2, in *In re Brooke C.* (2005) 127 Cal.App.4th 377, 382-383. As noted by the Fourth District, Division 3, in *In re William B.* (2008) 163 Cal.App.4th 1220, 1230, a parent's repeated drug use during and immediately following treatment "cannot be considered a simple relapse; rather, it was a resumption of drug use demonstrating resistance to treatment."

*In re B.E.* is factually distinguishable from this case. The parents in *B.E.* "participated in all of the services recommended by the social worker" (*In re B.E.*, *supra*, 46 Cal.App.5th at p. 937) and "enjoyed lengthy periods of sobriety while participating in reunification services in prior cases" (*id.* at p. 945). Mother here did not follow the probation department's directions to enter a program, delayed entry into programs, continued to use drugs on weekends while in programs, and was unable to maintain a year's sobriety after 2016. The ruling bypassing services did not violate Mother's due process rights or excuse compliance with the writ requirement.

Reduction in visitation did not excuse the requirement to seek a writ because it is not a jurisdictional defect that "fundamentally undermined the statutory scheme." (*Janee J.*, *supra*, 74 Cal.App.4th at p. 208.) Once reunification services were terminated, the focus shifted to the children's permanency and stability, and different statutes regarding visitation applied. (*In re D.B.* (2013) 217 Cal.App.4th 1080, 1090-1091.)

The cases Mother relies on to excuse her failure to seek a writ are inapposite. In *Janee J.*, the court did not excuse the writ requirement regarding the alleged failure of the juvenile court to comply with several requirements, including notice that parental rights could be terminated for failure to participate in case plan services, adequate findings that return of the child

11

would create a substantial risk of detriment, a finding that the parent had been offered six months of reasonable services, and specification of the grounds to terminate parental rights. (*Janee J.*, *supra*, 74 Cal.App.4th at pp. 209-214.) In *In re T.G.*, *supra*, 242 Cal.App.4th 976, the court did not resolve whether the forfeiture rule applied but affirmed the trial court's bypass of reunification services on the merits.

This case is unlike *In re S.D.* (2002) 99 Cal.App.4th 1068, an appeal from termination of parental rights that found counsel was ineffective at the jurisdictional hearing, even though the parent had not appealed from that earlier hearing. The error there "was entirely legal, and quite fundamental"—counsel was not aware that jurisdiction pursuant to section 300, subdivision (g), required not just that the parent was incarcerated but also that they were unable to arrange for the children's care. (*In re S.D.*, at pp. 1079-1080.) The issues raised by Mother here do not involve an absence of jurisdiction. Accordingly, Mother has forfeited an appeal of the order setting the 366.26 hearing, and all orders on which it was based.

### *Termination of Mother's parental rights*

Mother is precluded from directly challenging the order terminating her parental rights because she did not object to it in the trial court. (*In re Aaron B.* (1996) 46 Cal.App.4th 843, 846.) Instead, she contends her counsel was ineffective when she failed to provide an offer of proof for the 366.26 hearing.

Parents have a statutory and constitutional right to effective counsel regarding termination of parental rights. (§ 317.5, subd. (a); *In re A.R.* (2021) 11 Cal.5th 234, 246.) To establish ineffective assistance of counsel, Mother must demonstrate that "'counsel failed to act in a manner to be

12

expected of reasonably competent attorneys practicing in the field of juvenile dependency law,'" and "'it is reasonably probable that a result more favorable to [her] would have been reached in the absence of the error." (*In re A.R.*, at pp. 251-252.) Mother does not establish either requirement.

The department's reports outlined the visits Mother attended and those she missed. She does not describe what additional offer of proof she could have made to establish she "maintained regular visitation and contact" (§ 366.26, subd. (c)(1)(B)(i)) or that giving her custody would "'outweigh the well-being the child[ren] would gain in a permanent home with new, adoptive parents'" (*In re Collin E.* (2018) 25 Cal.App.5th 647, 663). Mother has failed to "prove prejudice that is a "'demonstrable reality," not simply speculation.' [Citations.]" (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1241.)

Mother's reliance on *In re A.G.* (2020) 58 Cal.App.5th 973, is unavailing. There, the mother submitted a detailed offer of proof "demonstrating that the parent will present specific evidence to support the [beneficial relationship] exception." (*Id.* at pp. 1006-1007.) Here, no offer of proof was submitted, and the record contains no suggestion of the evidence counsel might have offered.

### *Forfeiture regarding Father*

Father contends his right to due process was denied, and the denial was prejudicial, which excuses his failure to seek an extraordinary writ. We agree.

### *1. Parenthood status*

In dependency proceedings, fathers are divided into four categories: de facto fathers, alleged fathers, natural (biological) fathers, and presumed fathers. (*In re Jerry P.* (2002)

13

95 Cal.App.4th 793, 801.)  A presumed father has greater rights than an alleged father.  (*Ibid.*)  Only a presumed father is entitled to reunification services (§ 361.5, subd. (a)) or custody (§ 361.2).  (*In re Zacharia D.* (1993) 6 Cal.4th 435, 451; *In re Jerry P.*, *supra*, 95 Cal.App.4th at p. 801.)

The juvenile court has a duty to inquire of the mother and others as to presumed or alleged fathers, and shall attempt to determine the child's parentage.  (§ 316.2, subd. (a); rule 5.635(a).)  The inquiry may include factors such as marriage, cohabitation, support payments, and whether any man has formally acknowledged paternity, "including by signing a voluntary declaration of paternity."  (§ 316.2, subd. (a); rule 5.635(b).)  Although Father is listed on the children's birth certificates and Mother confirmed he was the father, the court referred to him throughout the proceedings as the "alleged father" and did not inquire further.

Father made clear his desire to become a custodial parent when released from prison.  As an alleged father, due process required he be given "'an opportunity to appear and assert a position and attempt to change his paternity status. [Citations.]'"  (*In re Paul H.* (2003) 111 Cal.App.4th 753, 760.)  Father was not given that opportunity.

An alleged father shall be provided Judicial Council form JV-505, Statement Regarding Parentage.  (§ 316.2, subd. (b).)  The form allows him to state his position regarding parenthood.  Even when represented by counsel, form JV-505 acts as a "failsafe mechanism" to advise of the steps to establish paternity.  (*In re J.W.-P.* (2020) 54 Cal.App.5th 298, 308.)  The record does not show that the form was ever sent to Father.  This was error.  (*Id.* at p. 306.)  The error was not harmless because

14

providing the form "could have made all the difference to father." (*Id.* at p. 308.)

If the juvenile court had inquired, Father likely could have established presumed fatherhood. Presumed fatherhood may be established in several ways, including (1) by executing a voluntary declaration of parentage, or (2) by receiving the child into his home and openly holding the child out as his natural child. (Fam. Code, §§ 7571, 7611; rule 5.635(c); *In re Jerry P.*, *supra*, 95 Cal.App.4th at p. 802.) A parent who is not married to the mother can be listed on the birth certificate only if he signs a voluntary declaration of parentage. (Health & Saf. Code, § 102425, subd. (a)(4)(C).) Because Father was listed on the children's birth certificates, there is a presumption that he signed voluntary declarations of parentage. (*In re Raphael P.* (2002) 97 Cal.App.4th 716, 738.)

In addition, the court knew Father was "in [a] relationship" with Mother until he was incarcerated when the children were young, but the court never inquired whether he "receive[d] the child[ren] into [his] home" or held them out as his natural children. Failure to consider elevating Father's status to presumed father excused the writ requirement because it "fundamentally undermined the statutory scheme" and kept him "from availing himself . . . of the protections afforded by the scheme as a whole." (*Janee J.*, *supra*, 74 Cal.App.4th at p. 208.)

### 2. *Absence at jurisdiction and disposition hearing*

Father may challenge due process errors at the jurisdiction and disposition stages in this appeal from the termination of his parental rights because they "affected the ultimate outcome of the proceedings." (*In re Christopher L.* (2020) 56 Cal.App.5th 1172, 1177, review granted Feb. 17, 2021,

S265910.)

Both alleged and presumed fathers, including those who are incarcerated, have the right to appear at detention and jurisdictional hearings. (§ 349, subd. (a); see §§ 290.1, subd. (a)(2), 290.2, subd. (a)(2); rule 5.530 (f)(1)(A).) A jurisdictional or dispositional hearing may not proceed unless the incarcerated parent is present or has waived their appearance. (Pen. Code, § 2625, subd. (d); rule 5.530(f)(4).) Father was not at the hearing, even though he expressed his desire to be present and did not waive his appearance. His absence violated his right to due process, and requires reversal unless the error was harmless. (*In re Jesusa V.* (2004) 32 Cal.4th 588, 625; *In re Christopher L., supra*, 56 Cal.App.5th at p. 1177, review granted.) As discussed below, the error was not harmless.

### 3. *Waiver of trial rights*

The juvenile court's failure to obtain a valid waiver of Father's constitutional rights before he submitted on jurisdiction violated his right to due process. The error is reversible because it was not harmless beyond a reasonable doubt. (*In re S.N., supra*, 2 Cal.App.5th at pp. 671-672.)

### 4. *Harmless error*

On this record, it is not clear that Father would have been denied reunification services if he had been present and afforded his right to a contested jurisdictional hearing. (See *In re A.G., supra*, 58 Cal.App.5th at p. 1015-1016.) The dependency petition focused primarily on the effect of Mother's substance abuse on the children. (§ 300, subd. (b)(1).) The petition alleged that Father was "incarcerated in prison leaving the children without any provision for support" (§ 300, subd. (g)), but the department's reports provided little support for the allegations

16

against Father.

"There is no 'Go to jail, lose your child' rule in California." (*In re S.D.*, *supra*, 99 Cal.App.4th at p. 1077.) Instead, "the issue is whether, as of the time of the jurisdictional hearing, [the parent] could *arrange* for the care." (*Id.* at pp. 1077-1078.) The children here were placed with grandparents. Had Father been given the opportunity to contest jurisdiction, he could have attempted to show that his incarceration did not constitute failure to protect the children or leave them without support. But the court "provided no hearing whatsoever." (*In re Lesly G.* (2008) 162 Cal.App.4th 904, 915.)

"[A]n incarcerated parent is entitled to reunification services unless it would be detrimental to the child. (§ 361.5, subd. (e)(1))." (*In re R.A.* (2021) 61 Cal.App.5th 826, 839.) The court may bypass reunification services for a parent who has been convicted of a "violent felony" (§ 361.5, subd. (b)(12)), and may provide services for such a parent only if it finds clear and convincing evidence that reunification would be in the child's best interest (§ 361.5, subd. (c)(2)).

The department contends the "only way" Father could have received a prison sentence of 16 years is if the court imposed a 10-year enhancement for commission of a gang crime that "is a violent felony." (Pen. Code, §§ 186.22, subd. (b)(1)(C), 667.5, subd. (c)(20).) But that is not the only possible conclusion to be drawn from the limited information in the record about the criminal case. The court could have sentenced Father to 16 years without including a "violent felony" enhancement.[4] We therefore

_____

[4] The information regarding the criminal sentence is contained in Father's summary criminal history ("rap sheet"). It lists three substantive crimes (Pen. Code, §§ 136.1, subd. (c)(1),

17

cannot assume the court would have denied him reunification services.

### *Termination of Father's parental rights*

The same prejudicial due process violations that excuse Father from the writ requirement also require that we reverse the order terminating his parental rights.

Father was denied his right to be present at the jurisdiction/disposition hearing and did not waive his right to a contested hearing.  We cannot conclude that Father would be "'doomed to failure'" if a contested hearing had been held.  (*In re A.G.*, *supra,* 58 Cal.App.5th at p. 1016.)  Because Father did not have the opportunity to establish presumptive fatherhood, the court did not consider reunification services.  "We cannot assume, based on this dearth of information, that had [Father] established his paternity . . . he would not have received reunification services."  (*In re Paul H.*, *supra,* 111 Cal.App.4th at p. 762.)  Had the court granted reunification services, "it was within the realm of reasonable probability" that his parental rights would not be terminated.  (*In re A.J.* (2019) 44 Cal.App.5th 652, 674.)  Accordingly, failure to afford Father his due process rights was

---

664/422, and 417, subd. (a)(1)), a prior serious felony conviction (Pen. Code, § 667, subd. (a)(1)) and a prior prison term (Pen. Code, § 667.5, subd. (b)).  It notes "CRIM ST GANG" regarding the charge of section 136.1.  It does not specify which term was selected from the sentencing triad for each offense, whether the sentences were concurrent or consecutive, whether any of the various gang enhancements specified in Penal Code section 186.22 were imposed, how many years, if any, were added for the prior offenses, or whether any sentences were doubled pursuant to the two strikes law (Pen. Code, § 667, subd. (e)(1)).

reversible error.  (*In re A.G.*, at p. 1016; *In re Lesly G., supra,* 162 Cal.App.4th at p. 916.)[5]

### *Conclusion*

In summary, reversal is compelled as to Father because he was denied his fundamental due process rights. Although it is an unfortunate consequence that permanency will be delayed, when due process is the issue it is not for us to speculate about the outcome.  The prognostication of the dissent may turn out to be correct, but this is not a proper rationale to deny Father his day in court.  Assumptions are an unacceptable substitute for due process.

### DISPOSITION

The order terminating parental rights is affirmed as to S.H. (Mother) and reversed as to S.R. (Father).  The matter is remanded to the juvenile court for further proceedings regarding Father.

NOT TO BE PUBLISHED.


TANGEMAN, J.


I concur:


GILBERT, P. J.

---

[5] Because it was reversible error for the court to fail to inquire as to Father's parental status, to hold the jurisdiction and disposition hearing in his absence, and to allow submission on the reports without a waiver of rights, we need not resolve the additional contention that his counsel rendered ineffective assistance when she failed to raise these issues.  (See *In re J.W.-P., supra,* 54 Cal.App.5th at p. 308.)

YEGAN, J., Dissenting.

I agree the judgment should be affirmed as to Mother. I respectfully dissent as to the reversal for Father. Any error with respect to Father's not being personally present for the dependency hearings and/or being deprived of procedural rights, is harmless by any standard of appellate review. This is not "structural error" requiring automatic reversal. At all times during the dependency proceedings, Father was represented by counsel. He was personally present at only one hearing. He was not personally present at others because he was in prison and locked down because of the covid pandemic.

If there is one thing to be learned by the trial court from this reversal, it is that it must make a complete record of what has transpired as to each parent. It does not appear that the trial court intentionally or negligently trampled upon Father's due process rights concerning the children. Perhaps there were unreported proceedings which could explain Father's position in the trial court. Perhaps trial counsel recognized the reality of the situation: even though her client had procedural rights, there was no arguable issue to present because Father was serving a lengthy state prison sentence. Given Father's non-relationship with the two children, placement with the maternal grandparents was about the best outcome that he could have hoped for.

When Father was sentenced to state prison for 16 years, the children were, respectively, 2 years and 15 months old. At that point, even if Father is a "presumed father," he had no "established relationship" with the children. He was, and is, a stranger to them. He had never "unified" with them. It appears to me that absent "unification," there can be no "reunification."

1

And, of course, this begs the question of just how there could be "reunification" in the confines of the California state prison system.

Practically speaking, a 16-year prison sentence is fundamentally incompatible with raising children. Childhood is fleeting and the children cannot wait for Father to be released from prison, even if he is released before serving his full term.

There is no miscarriage of justice here. Father has no realistic hope of "reunifying" with the children because he will not be released from prison before their childhoods are over. To now vacate placement and start the dependency proceedings anew, giving Father procedural rights, is, on this record, a disservice to the children.

NOT TO BE PUBLISHED.


YEGAN, J.

2

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____

Nancy R. Brucker, under appointment by the Court of Appeal, for Defendant and Appellant S.H. (Mother).

Deborah Dentler, under appointment by the Court of Appeal, for Defendant and Appellant S.R. (Father).

Michael C. Ghizzoni, County Counsel, Lisa A. Rothstein, Deputy County Counsel, for Plaintiff and Respondent.