Filed 1/25/21  In re Aiden R. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Aiden R. et al., Persons Coming Under the Juvenile Court Law. | B303195 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RACHELLI P.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. Nos.19CCJP04737A, 19CCJP04737B) |

APPEAL from orders of the Superior Court of Los Angeles County, Mary E. Kelly, Judge.  Affirmed.

Donna B. Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Tracey Dodds, Deputy County Counsel, for Plaintiff and Respondent.

Caitlin Christian, under appointment by the Court of Appeal, for Minors Aiden R. and Alexander R.

_____

Rachelli P. (mother) appeals from the orders of the juvenile court taking jurisdiction over her two sons and removing them from her custody. We affirm.

## BACKGROUND

The family came to Los Angeles County Department of Children and Family Services's (DCFS) attention after mother and her newborn son, Alexander R., tested positive for methamphetamine at the hospital after his birth. Alexander R. was treated in the neonatal intensive care unit for low blood sugar and prenatal drug exposure. Although mother initially denied using methamphetamine, once she was confronted with the fact that she would have had to have smoked methamphetamine within the last three to five days for it to be in Alexander R.'s system, she admitted to using the drug, but refused to say for how long.

DCFS filed a Welfare and Institutions Code[1] section 300 petition on behalf of Alexander R. and his 15-year-old brother, Aiden R., under subdivision (b)(1), alleging that mother was

_____

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

unable to supervise or provide regular care for the children due to mother's substance abuse.[2]

Count b-1 alleged that Alexander R. was born suffering from a detrimental condition, consisting of a positive toxicology screen for methamphetamine, and that mother's use of methamphetamine endangered Alexander R.'s physical health and safety. Count b-2 alleged that mother was a current user of methamphetamine and had a history of illicit drug use, rendering her incapable of providing regular care for her children. Count b-2 further alleged that remedial services and mother's prior participation in an outpatient drug program had failed to resolve mother's drug problem.

At the detention hearing, mother submitted to detention of the children, and the juvenile court placed them with their maternal grandmother. The juvenile court granted mother monitored visitation for a minimum of three times per week for three hours per visit. Mother indicated that she had no Native American ancestry, but said that Aiden R.'s father might have "Blackfeet" or "Blackfoot" ancestry. She also informed the juvenile court that she intended to enter an inpatient substance abuse treatment program, however, two weeks later, mother opted to enroll in an outpatient program instead.

When DCFS interviewed mother for its jurisdiction and disposition report, she denied that Alexander R. tested positive for methamphetamine and refused to answer questions about her drug use during her pregnancy. However, mother admitted to using methamphetamine in the past and agreed to attend a substance abuse program with random drug testing.

---

[2] Aiden R. and Alexander R. have different fathers.

DCFS's investigation revealed that, in 2006, there was a prior referral to DCFS that mother used methamphetamine in front of Aiden R. The referral was substantiated, however, Aiden R. appeared to be safe in the home of mother due to her strong family support and because she was enrolled in a substance abuse program. In 2017, there was another substantiated referral for general neglect of Aiden R. based on mother's use of methamphetamine, which resulted in DCFS filing a section 300 petition, alleging that mother had a history of illicit drug use. However, it appears that the petition was not sustained because mother was provided with a voluntary maintenance program. In the present matter, DCFS interviewed Aiden R.'s paternal grandfather, who indicated that he had witnessed mother buying drugs in the neighborhood and that he had warned her two years prior that, if she did not stop using, "they are going to take your kids away."

At the adjudication hearing, the juvenile court admitted the detention report, the jurisdiction and disposition report, and two informations indicating mother had enrolled in an outpatient drug treatment program. Mother's counsel introduced no evidence and submitted on all legally admissible evidence concerning jurisdiction, offering argument regarding disposition only. The juvenile court sustained the petition as alleged and proceeded to disposition. Mother requested that the children remain with her, or, alternatively, that she and the children be allowed to reside with the maternal grandmother.

The juvenile court declared the children to be dependents of the juvenile court and found by clear and convincing evidence that there was a risk to the children's health and safety if they were to be returned to mother. While the juvenile court

4

commended mother for her progress in her outpatient treatment, it found that returning the children to her care created a substantial risk of harm. The juvenile court ordered mother to participate in a full drug and alcohol program, attend a parenting class, participate in individual counseling, and submit to drug testing. The juvenile court also increased mother's visitation from three to six hours per visit.

Mother appealed the juvenile court's jurisdictional findings and disposition orders. While mother's appeal was pending, mother made substantial progress in her programs and the children were placed back in her care while remaining under the juvenile court's jurisdiction.[3]

## DISCUSSION

Mother raises several issues on appeal. First, mother contends the juvenile court's jurisdiction and dispositional orders were not supported by substantial evidence. Second, mother asserts that the jurisdiction and dispositional orders must be reversed because the juvenile court failed to obtain an oral or written waiver of mother's trial rights at the jurisdiction hearing after her counsel submitted on the evidence. Third, mother asserts that the matter must be reversed and remanded because the juvenile court failed to comply with the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.). We address each issue in turn.

---

[3] Mother's request for judicial notice, filed on July 24, 2020, is granted.

I.    Substantial evidence supported the juvenile court's findings.

Mother contends that there was insufficient evidence to support the juvenile court's jurisdiction and dispositional orders that her substance abuse endangered the children and their removal was necessary to protect their wellbeing.  We disagree.

Section 300, subdivision (b)(1) reads, in relevant part, that a child is subject to the jurisdiction of the juvenile court when the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child . . . due to the parent's . . . substance abuse."  The juvenile court is not required to find that the child was in fact harmed, but only that the child is at "substantial risk" of harm.

DCFS bears the burden to establish the jurisdictional facts by a preponderance of the evidence.  (*In re D.C.* (2011) 195 Cal.App.4th 1010, 1014.)  To justify removal of a child from a parent or guardian's custody, DCFS must prove that removal is necessary to protect the child by clear and convincing evidence. (§ 361, subd. (c).)  We will uphold the juvenile court's jurisdictional findings and dispositional order unless " 'after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is no substantial evidence to support the findings.' "  (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.)  Substantial evidence is any evidence which is reasonable, credible, and of solid value to support the juvenile court's finding. (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564.)  We resolve all conflicts in favor of the prevailing party and defer to the juvenile

6

court on issues of credibility. (*In re Albert T.* (2006) 144 Cal.App.4th 207, 216.)

Here, there was substantial evidence that mother had a history of methamphetamine use and that prior intervention by DCFS and treatment failed to mitigate mother's problem. Alexander R. had a positive toxicology screen for methamphetamine at the hospital when he was born. Mother had a prior history with DCFS that included two substantiated referrals that mother was using methamphetamine and was neglecting Aiden R. While mother completed a drug treatment program in connection with one of those prior referrals, a year later, she tested positive for methamphetamine, leading to the current petition. While mother generally denied that she used methamphetamine, when confronted with Alexander R.'s positive toxicology screen, she admitted to using the drug. In addition to her prior history and admissions, the paternal grandfather witnessed mother buying drugs and had warned mother over two years that her drug abuse put her children at risk. Mother's and Alexander R.'s positive toxicology screen at the hospital supported the conclusion that mother had used methamphetamine during her pregnancy.

Mother asserts that the drug screen results were for medical use only and "not for legal purposes." However, the juvenile court, not the drug screener, decides the admissibility of evidence. The drug test results were admitted without objection. Thus, mother waived any objection to their admissibility. (Evid. Code, § 353.) Mother also argues that the test results do not meet the standards for admissibility in criminal actions. However, to convict a criminal defendant, the prosecution must meet a higher evidentiary standard of proof beyond a reasonable

doubt. In a juvenile dependency, DCFS must prove jurisdictional facts by a preponderance of the evidence and that removal is necessary by clear and convincing evidence. (*In re D.C.*, *supra*, 195 Cal.App.4th at p. 1014; § 361, subd. (c).) We do not reweigh evidence on appeal. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 288.)

Mother also argues that her admissions were too vague as to time and frequency to support the conclusion that she was currently using methamphetamine. However, mother's admissions were made in the context of Alexander R.'s positive toxicology screen at the hospital after she was told that Alexander R. could only have tested positive if mother had smoked methamphetamine within the previous three to five days.

With respect to Aiden R. only, mother argues that there was no evidence that her methamphetamine use created a substantial risk to him as he was not of a tender age and appeared to be a well-adjusted and healthy teenager. While the evidence supports the conclusion that Aiden R. had not yet suffered any harm from mother's drug abuse, we disagree with mother's conclusion that her drug abuse did not create a substantial risk of future harm. Mother failed to maintain her sobriety throughout Aiden R.'s life that resulted in two prior referrals concerning potential harm to Aiden R. Although the juvenile court did not assume jurisdiction after those prior referrals, the referrals were substantiated and did not prevent mother from using methamphetamine as evidenced by the positive toxicology screen that showed that mother had been using during her pregnancy with Alexander R.

Lastly, mother contends that because she tested negative twice since the start of her outpatient treatment, there was no

evidence that she used methamphetamine. However, those two negative tests occurred over a period of 11 days. In the context of mother's failure to mitigate her substance abuse through prior drug programs over a period of years, two clean tests in 11 days were insufficient to show that her substance abuse problem had been abated.

We conclude that the juvenile court's jurisdiction and dispositional orders were supported by substantial evidence.

## II. Harmless error

Mother contends the juvenile court violated her due process rights by failing to ensure that she knowingly and voluntarily waived her right to trial after her submission at the jurisdiction hearing. While we agree with mother that the juvenile court erred, we conclude the error was harmless.

California Rules of Court, rule 5.682(d) provides that a parent may submit to the jurisdictional determination of the juvenile court based on the information submitted during the hearing. After submission, the juvenile court must also find that the parent knowingly and intelligently waived his or her right to a trial on the issues before the court and that the submission was voluntarily made. (Cal. Rules of Court, rule 5.682(e).)

Because the due process rights protected by these rules implicate a parent's fundamental right to care for and have custody of his or her child, the juvenile court must advise the parents of their due process rights to a hearing and must obtain an express personal waiver of those rights if the hearing is to proceed without further evidence. (*In re Monique T.* (1992) 2 Cal.App.4th 1372, 1377.) We review the juvenile court's failure to obtain a waiver for harmless error. (*Id.* at p. 1374.) We may

9

affirm only if the error is harmless beyond a reasonable doubt. (*In re S.N.* (2016) 2 Cal.App.5th 665, 672.)

Here, we conclude the error was harmless because the evidence of mother's methamphetamine use was overwhelming. As discussed above, mother's history of methamphetamine use and current abuse of the drug was supported by the positive toxicology screen for methamphetamine at the time of Alexander R.'s birth, the prior referrals to DCFS, her own admissions of prior use, and the statements from paternal grandfather that he witnessed mother buy drugs and that he had warned her over two years that her drug abuse put the children at risk.

Mother contends that, had she known about her right to a trial, she would have introduced evidence, cross-examined some witnesses, or explained her inconsistent statements regarding her methamphetamine use, which might have resulted in a denial of the petition. However, beyond mother's general assertions that she would have explained her inconsistent statements regarding her methamphetamine use, mother does not describe her testimony or how it would have changed the outcome. Mother was represented by counsel throughout the proceedings and when the juvenile court asked mother's counsel if she had any evidence to introduce at jurisdiction, mother's counsel indicated she was submitting on all legally admissible evidence. We assume the juvenile court found mother's denials of methamphetamine use not credible considering her own admissions of use combined with the positive toxicology screen. Because mother's contention is supported only by speculation, we find the error was harmless beyond a reasonable doubt.

10

III.   Mother's ICWA claim is moot because the children have been returned to her custody.

Lastly, mother asserts we must reverse and remand for further ICWA inquiry and notice because DCFS failed to notify and work with the Blackfeet tribe to verify if Aiden R. was a member or eligible for membership and did not inquire whether Alexander R.'s father had Indian ancestry.

ICWA establishes minimum federal standards that a state court must follow before removing an Indian child from his or her parents' care.  (*In re Austin J.* (2020) 47 Cal.App.5th 870, 881–882.)  These standards impose additional safeguards, which must be satisfied in cases involving Indian child custody proceedings.  (*Ibid.*)  Indian child custody proceedings are defined as hearings that may culminate in an order for foster care placement, adoptive placement, or the termination of parental rights.  (§ 224.1, subd. (d); 25 U.S.C. § 1903(1).)  To ensure these protections are provided in cases involving Indian children, the juvenile court and DCFS have an "affirmative and continuing duty" to inquire whether a child subject to a dependency petition "is or may be an Indian child."  (§ 224.2, subd. (a).)  The duty to inquire begins with the DCFS's "initial contact" with the family and requires DCFS ask the children's parents and relatives about the children's Indian status.  (§ 224.2, subd. (a).)

However, if the child has been returned to parental custody, any error in failing to comply with ICWA does not necessitate reversal or remand on appeal.  (*In re Austin J.*, *supra*, 47 Cal.App.5th at p. 881, fn. 5.)  That is the case here, and there is no meaningful relief we can grant mother.

11

## DISPOSITION

The orders are affirmed.

NOT TO BE PUBLISHED.


DHANIDINA, J.


We concur:


EDMON, P. J.


EGERTON, J.