Filed 4/27/23  In re Ke.I. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re Ke.I. et al.,<br><br>Persons Coming Under the Juvenile Court Law. | B325074<br><br>(Los Angeles County Super. Ct. No. 20CCJP00104) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>S.J.,<br><br>　　　Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Steff Padilla, Judge Pro Tempore.  Affirmed.

Linda J. Vogel, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

_____

When assuming jurisdiction over the children of appellant S.J. (Mother), the juvenile court sustained allegations that Mother exposed the children to domestic violence between her and Keith I. (Father), failed to protect the children from Father's physical abuse, herself physically abused one of the children, and abused alcohol and marijuana in a manner posing substantial risk to the children. The court also made jurisdictional findings against Father based on domestic violence and his physical abuse of the children.

On appeal, Mother does not dispute the jurisdictional findings against her based on domestic violence or her failure to protect; instead, she challenges only the findings concerning substance abuse and that she abused one of the children. Mother contends that she was denied due process during the jurisdiction hearing because the court failed to inform her of certain rights applicable to that hearing, and that substantial evidence does not support either of the two challenged findings. Father has not appealed; the jurisdictional findings made against him are uncontested.

While this appeal was pending, dependency jurisdiction based on the jurisdictional findings at issue in this appeal terminated. Soon thereafter, the juvenile court reasserted jurisdiction over both children after the Los Angeles County Department of Children and Family Services (DCFS) filed a new petition making allegations only as to Father. DCFS argues we should dismiss this appeal as moot because the dependency

2

action it addresses has concluded, and because the challenged findings are non-justiciable given the other grounds for the original assertion of jurisdiction. If we decline to dismiss the appeal, DCFS argues that any alleged due process violation was harmless, and that substantial evidence supports the challenged jurisdictional findings. Mother argues we should consider this appeal, and her arguments about two of the prior jurisdictional findings, on the merits.

Although we find Mother's appeal moot, we exercise our discretion to consider its merits. We reject Mother's claims that any due process violation occurred at the jurisdiction hearing mandating reversal, and find that substantial evidence supports the juvenile court's findings that Mother physically abused one of her children and had substance abuse issues that posed a substantial risk of harm to both children. We accordingly affirm.

## FACTUAL AND PROCEDURAL BACKGOUND

Mother and Father have two children together, son Ke.I. (born September 2007) and daughter Ka.I. (born October 2011). As Mother's appeal does not dispute the jurisdictional findings based on Father's conduct, or those against Mother based on domestic violence and her failure to protect both children from Father's physical abuse, we limit our factual recitation accordingly.

## A.     October 2019 Incident and Other Relevant Conduct

On October 13, 2019, Ke. and Ka. witnessed a violent altercation between Mother and Father to which police responded. According to the police report for this incident, the parents had previously engaged in "multiple unreported incidents of [d]omestic [v]iolence." When police interviewed the family,

3

both children reported Mother was drunk, engaged in a verbal altercation with Father, and then ransacked the home as the children ran into their room to hide.  Father confirmed the children's statements, noting Mother yelled as he attempted to calm her down.  Father said Mother then hit him with a closed fist approximately 10 times.  In addition, Mother grabbed a belt and attempted to hit Father with it.  Father then grabbed Mother, placed her outside the home, and shut the door.  Police observed a one-inch abrasion on Father's left shoulder.

Police found Mother in a neighbor's apartment crying.  Mother refused to speak with law enforcement about what had occurred, and refused medical treatment.  Mother was arrested for assaulting Father.  Responding officers said Mother was "extremely belligerent" during their interactions with her; the police call log further described Mother as "extremely intoxicated" and said that Mother continued to act belligerently after her arrest and during transport to jail.

Following this incident, DCFS interviewed the family in November and December 2019.  Mother said on the day of the incident she had two glasses of wine "and could not remember anything" about what happened other than "people trying to aggressively grab her" and "being beaten so bad that she could not get up."  Mother acknowledged a video recording of the incident showed her intoxicated, but she professed confusion as to how she became inebriated when she only drank two glasses of wine.  Mother said that she knocked things down in the home only because she did not have her glasses.  Father stated Mother was drunk during the altercation, and Father found a container with liquor that Mother had been drinking from throughout the day.

Ke. said he witnessed Mother take three shots of an unknown substance and smoke marijuana on the day of the altercation.  When ransacking the home, Mother kicked and broke a television and computers.  Ke. also stated Mother "whoops" him with a belt "anywhere" on his body as a form of discipline.  According to Ke., Mother hits him with a belt about three times per month when he is in trouble.  Ke. stated he sustained bruises in the past from these beatings, but "that the last time[ ] was when he was seven years old and [M]other does not do that anymore."

Ka. was hesitant to speak with DCFS, saying she wanted to keep Mother's business private.  Ka. denied Mother smoked or drank alcohol.  Ka. said she felt safe living with Mother, not Father, and spoke negatively about Father including stating that he was the aggressor during the October 2019 domestic violence incident.  Later in the same interview, Ka. said she witnessed Mother take a shot of Hennessey and vodka on October 13, and said she believed that was Mother's first time drinking alcohol.

**B.      Section 300 Petition**

On January 8, 2020, DCFS filed a section 300 petition alleging, among other things, that Father and Mother engaged in domestic violence placing Ke. and Ka. at risk of serious physical harm (§ 300, subds. (a), (b); counts a-1, b-1), that Father physically abused Ke. and Ka. and that Mother failed to protect the children from such abuse (*id*., subds. (a), (b); counts a-2, a-3, b-2, b-3), that Mother physically abused Ke. (*id*., subds. (a), (b); counts a-4, b-4), and that Mother's abuse of alcohol and marijuana placed the children at risk of serious physical harm. (*Id*., subd. (b); count b-5).

On January 9, 2020, Mother appeared in court and was appointed counsel. The court asked whether Mother's counsel wished to "waive reading of the petition, statement of rights, and enter a denial." Counsel for Mother responded, "Yes, your honor, on behalf of [M]other." The minute order from the hearing noted Mother was personally served with a written advisement of rights pursuant to section 316.[1]

Through her counsel, Mother submitted on the issue of detention. Thereafter, the court made a prima facie finding the children were described by section 300, and ordered them detained from parental care. DCFS temporarily placed the children with maternal grandmother pending the dispositional hearing.

In February 2020, DCFS re-interviewed the family. Despite her previous inability to recall details from the October 2019 domestic violence incident, Mother now remembered Father was drinking when he attacked her. Mother now claimed she drank only one glass of wine during the day of the altercation, as opposed to the two glasses she previously stated. Mother denied she ever drank any alcohol other than wine, stated that when she drank wine it was usually only one or two glasses, and said that a bottle of wine lasted her about a month. Mother denied ever

---

[1] That section provides that, "Upon his or her appearance before the court at the detention hearing, each parent or guardian and the minor, if present, shall first be informed of the reasons why the minor was taken into custody, the nature of the juvenile court proceedings, and the right of each parent or guardian and any minor to be represented at every stage of the proceedings by counsel." (§ 316.)

being intoxicated to the point that she could not parent the children. Mother denied smoking marijuana.

Mother asserted Ke. was exaggerating about Mother's physical discipline. Mother did admit she had recently threatened to hit Ke. with a belt, but said she never followed through with her threats. Mother admitted she spanked Ke. in the past with a belt, but not within the past five years. Mother denied ever leaving any marks or bruises on Ke. when she hit him.

Father stated Mother was drinking tequila before the October 2019 altercation and said there was no wine in the home. Father said Mother was drunk during the October 2019 incident but denied Mother had a problem with alcohol. Father further denied any knowledge of Mother using marijuana, and denied Mother had ever hit the children.

Contrary to his prior statement, Ke. now denied ever seeing Mother drink alcohol or smoke marijuana. Ke. said both Mother and Father hit him in the past, and Father hit Ka. Ke. stated Mother had hit him with her hand and a belt but could not give a timeframe of when these incidents occurred. Ke. indicated in this interview that Mother's physical abuse left marks but not bruises.

Ka. now denied witnessing any physical violence between the parents. Ka. also denied Mother or Father ever hit either of the children. Ka. said she never witnessed either parent drink alcohol or smoke marijuana.

DCFS also interviewed extended family members. Maternal grandmother and maternal grandfather said they never witnessed Mother hit the children. Maternal grandmother said Mother used to smoke marijuana in the past, but maternal

grandmother never witnessed Mother under the influence of drugs or alcohol while caring for the children. Maternal grandfather was aware that Mother drank alcohol but had never seen her drink in the children's presence. Paternal uncle denied any history of domestic violence between the parents, although he witnessed Mother become belligerent and argumentative over minor topics whenever she drank alcohol. Paternal uncle stated Mother was unable to control herself when she drank alcohol. Paternal uncle did not believe Mother physically abused Ke., but had witnessed Mother verbally belittle Ke. as well as Father. Paternal uncle said he had no knowledge of any drug abuse issues Mother might have, stating he was not involved in Mother's personal life.

## C.    Jurisdiction/Disposition Hearing

In a jurisdiction/disposition report filed February 19, 2020, DCFS requested the juvenile court sustain the section 300 petition, remove the children from parental care, and order family reunification services with monitored visitation for the parents. Attached to jurisdiction/disposition report was a copy of a "Notice of Hearing on Petition" mailed to Mother's residence; among other things, the notice indicated the date of the jurisdiction hearing and that Mother had "the right to be present at the hearing, to present evidence, and to be represented by an attorney." The jurisdiction hearing was continued several times due to the COVID-19 pandemic. DCFS mailed Mother additional notices for these continued hearing dates containing the same advisement of rights.

The combined jurisdiction/disposition hearing took place on June 26, 2020. Due to the COVID-19 pandemic, the parties and counsel participated remotely by WebEx. Mother was present by

8

telephone and represented by counsel. The juvenile court stated it was conducting the hearing remotely for everyone's safety and protection against the COVID-19 virus. The court made clear that despite these safety protocols, the hearing "will be a trial as you have discussed with your attorney."

The juvenile court admitted, without objection, several DCFS reports into evidence. Counsel for DCFS rested on those reports, without calling any witnesses. Both counsel for the children rested without introducing any further evidence. Father's counsel introduced two exhibits, which the juvenile court admitted into evidence. The court then asked if Father rested or wished to call witnesses; Father rested and offered no additional evidence.

Mother's counsel then introduced three exhibits, which the juvenile court admitted into evidence. Those exhibits showed Mother had completed programs related to anger management, parenting, and domestic violence. After the court admitted the exhibits, Mother's counsel rested.

Counsel then argued. With regard to the domestic violence allegation, Mother's counsel asked the court to conform the petition to proof by indicating Mother was defending herself and Father was the "primary aggressor." Counsel also noted that Mother and Father were no longer living together. Concerning the failure to protect allegations, counsel for Mother highlighted Mother's statements to DCFS that she was unaware of any physical abuse by Father and asked the court to dismiss those counts. Mother's counsel also argued the facts before the court did not demonstrate any current risk of physical abuse by Mother of Ke., or that Mother was drinking to excess regularly or had any substance abuse problem.

In assuming jurisdiction over the children, the juvenile court found that Mother's substance abuse and violence were central to the risk of harm to the children, regardless of whether the parents were still involved in a relationship. The court accordingly rejected Mother's arguments, and sustained allegations related to Mother's domestic violence, failure to protect the children, physical abuse of Ke., and alcohol and drug abuse.

As for disposition, the juvenile court declared the children dependents of the court, removed them from parental care, and ordered family reunification services. The court ordered Mother to participate in a full drug and alcohol program with aftercare, a 12-step program, weekly drug testing, parenting education, domestic violence for perpetrators, and individual counseling to address anger management, domestic violence, and child protection. The court modified Mother's visitation with the children so that it was unmonitored.

On July 9, 2020, mother filed a timely notice of appeal from the orders made at the jurisdiction/disposition hearing. For reasons that are unclear, that notice of appeal was not transmitted to this court and docketed until November 7, 2022.

## DISCUSSION

### A.  Mootness

DCFS requests we dismiss Mother's appeal as moot because while this appeal was pending, the juvenile court terminated jurisdiction over Ke. in October 2021, and over Ka. in

February 2022.[2] Mother opposes, noting that in July 2022, DCFS filed a new section 300 petition regarding Ke. and Ka. involving alleged physical abuse by Father; Mother is non-offending with regard to this new petition. As of September 2022, the juvenile court had sustained allegations against Father involving his physical abuse of the children, removed Ke. and Ka. from Father, and released the children to the home of Mother; the matter remains pending. Mother argues in the alternative that even if the case is moot we should exercise our discretion to consider its merits.

1.	*Mother's Appeal is Moot*

We agree with DCFS that Mother's appeal is moot. A case is moot when it is " ' "impossible for [a] court, if it should decide the case in favor of plaintiff, to grant [her] any effect[ive] relief." ' [Citation.] For relief to be 'effective,' . . . the plaintiff must complain of an ongoing harm [that is] . . . redressable or capable of being rectified by the outcome the [appellant] seeks." (*In re D.P.* (2023) 14 Cal.5th 266, 276).) A case is not moot, for example, where the jurisdictional finding affects parental custody rights such as curtailing contact with a child. (*Id.* at pp. 277-278.) Speculative future harm, however, is insufficient to avoid mootness. (*Id.* at p. 278.)

Mother does not dispute that reversal of the challenged jurisdictional findings could not have deprived the juvenile court of jurisdiction; the jurisdictional findings based on Mother's domestic violence and her failure to protect Ke. and Ka., along

---

[2] We grant DCFS's unopposed request that we take judicial notice of the October 2021 and February 2022 orders terminating dependency jurisdiction.

11

with the allegations sustained as to Father, were all independently sufficient to create jurisdiction over the children and have not been challenged on appeal.  (See *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875 ["The reviewing court may affirm . . . if the evidence supports the decision on any one of several grounds"]; see also *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 [same].)  Nor has Mother demonstrated that the challenged jurisdictional findings provided the sole basis for subsequent orders affecting Mother's rights regarding either child given the other, uncontested jurisdictional findings against Mother.

Mother argues that her appeal is not moot because the challenged jurisdictional findings could potentially affect the re-opened dependency proceedings.  That concern, however, is speculative rather than concrete.  The children are now in Mother's care; she is no longer burdened by the restrictions on her visitation that resulted from the prior proceeding.  Mother is a non-offending parent in the new petition, removal was ordered only as to Father, and nothing before us suggests potential reversal of only some of the prior findings against Mother would definitively impact those on-going proceedings.  Mother's concerns about the potential effect of the challenged findings in the current dependency proceedings are therefore insufficient to find her appeal is not moot.  (*In re D.P.*, *supra*, 14 Cal.5th at pp. 281-282.)

2.     *Exercising Discretion to Consider the Merits of Mother's Appeal is Appropriate Here*

Although we agree with DCFS that Mother's appeal is moot, we decline to dismiss it.  Where a dependency appeal is moot, "[an appellate] court has discretion to decide the merits" of that moot appeal and concerns about possible future effects of a

12

jurisdictional finding may provide a basis for an appellate court to exercise that discretion.  (*In re D.P.*, *supra*, 14 Cal.5th at p. 283.)  In *D.P.*, our Supreme Court laid out a nonexhaustive list of factors for assessing "whether a court should exercise discretionary review of a moot appeal."  (*Id*. at p. 286.) Specifically, the court noted that courts may consider (1) "whether the challenged jurisdictional finding 'could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings,' or ' "could have other consequences for [the appellant], beyond jurisdiction" ' ";  (2) "whether the jurisdictional finding is based on particularly pernicious or stigmatizing conduct"; and (3) "why the appeal became moot."  (*Id*. at pp. 285-286.)

We exercise our discretion to consider the merits of Mother's appeal because two of these three factors are satisfied. As to the first factor, Mother and Father are again enmeshed in a dependency proceeding regarding Ke. and Ka. involving alleged physical abuse of Ke.; the court's findings as to Mother's abuse of Ke., as well as to her substance abuse, have some hypothetical potential to impact those on-going proceedings.  As to the second factor, although the jurisdictional findings against Mother carry some stigma, we do not consider them so stigmatizing as to weigh in favor of review given that (1) uncontested findings were made against Mother involving domestic violence and failure to protect the children from Father's physical abuse, and (2) Mother does not challenge any of the orders made upon the juvenile court's assumption of jurisdiction.  The final factor, the reason Mother's appeal was rendered moot, weighs in favor of discretionary review.  Mother filed a timely notice of appeal that, for unknown reasons, was not docketed with this court until two years and

13

four months later.  This delay occurred through no fault of Mother.  Had the appeal been docketed in the normal course, we likely would have considered Mother's appeal before the juvenile proceedings at issue concluded and rendered her appeal moot.

## B.     Mother's Due Process Claims

Mother asserts we should reverse the challenged jurisdictional findings because the juvenile court deprived her of due process by failing to comply with two California Rules of Court that require certain advisements, queries, and findings in connection with jurisdiction hearings.

In dependency proceedings, "Parents have a due process right to be informed of the nature of the proceedings and the allegations upon which the deprivation of custody is predicated so that they can make an informed decision whether to appear, prepare, and contest the allegations."  (*In re S.V.* (2022) 86 Cal.App.5th 1036, 1038.)  California Rules of Court, rule 5.534(g)(1) (rule 5.534(g)(1)) requires the court to advise a parent in a section 300 case of "(A) The right to assert the privilege against self-incrimination; [¶] (B) The right to confront and cross-examine the persons who prepared reports or documents submitted to the court by [DCFS] and the witnesses called to testify at the hearing; [¶] (C) The right to use the process of the court to bring in witnesses; and [¶] (D) The right to present evidence to the court" at any of the hearings.  (Rule 5.534(g)(1).)

California Rules of Court, rule 5.682(a) requires a court to give the advisements listed in rule 5.534(g)(1) at the commencement of the jurisdiction hearing.  After these advisements are given, as relevant here, California Rules of Court, rule 5.682 requires the court to advise the parent of "[t]he right to a hearing by the court on the issues raised by the

14

petition" (*id*., subd. (a)(1)), to inquire if the parent intends to admit or deny the petition's allegations (*id*., subd. (b)), and if the allegations are admitted, submitted, or there is a no contest plea to find that the parent "has knowingly and intelligently waived the right to a trial on the issues by the court, the right to assert the privilege against self-incrimination, and the right to confront and to cross-examine adverse witnesses and to use the process of the court to compel the attendance of witnesses on the parent['s] . . . behalf" (*id*., subd. (e)(3)).

Mother asserts the court did not advise her as required by rule 5.534(g)(1) at the commencement of the jurisdiction hearing, and that her counsel "de facto" submitted on the allegations of the petition without the court making the advisements, queries, or findings required by California Rules of Court, rule 5.682. Beginning with rule 5.534(g)(1), we agree with Mother that the court did not advise Mother as required at the beginning of the jurisdiction hearing. Nor did her counsel waive such an advisement. That, however, is not the end of the story because violations of rules such as rule 5.534(g)(1) "require[ ] reversal only if prejudice is shown." (*In re Monique T*. (1992) 2 Cal.App.4th 1372, 1377.)

The cases analyzing failures to give the advisements required by rules like rule 5.534(g)(1) involve situations where no contested hearing occurred, and the parent instead waived their right to a hearing and submitted on the evidence presented by DCFS. (E.g., *In re S.N.* (2016) 2 Cal.App.5th 665, 670-671; *In re Monique T*., *supra*, 2 Cal.App.4th at pp. 1376-1377.) In those cases, courts have applied the harmless error standard of *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.3d 705] (*Chapman*), namely whether the error was

15

harmless beyond a reasonable doubt. (*In re S.N.*, *supra*, at p. 672 [applying *Chapman* error standard]; *In re Monique T.*, *supra*, at pp. 1377-1387 [applying *Chapman*, but declining to decide whether error should be analyzed under *Chapman* "or the more easily met reasonable probability test" of *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*)].)

These precedents are rightly focused on the concerns created by a judicial officer accepting parent's waiver of a right to a contested jurisdictional hearing without court advisement and oversight to make sure such a waiver is knowing and voluntary. (E.g., *In re S.N.*, *supra*, 2 Cal.App.5th at p. 672.) Because the hearing below did not involve any waiver of the jurisdiction hearing but instead proceeded as a contested hearing, it is a significant question whether the C*hapman* standard should apply here instead of the *Watson* standard. We need not address this question, however, because even if the *Chapman* standard applies any error here was harmless beyond a reasonable doubt.

Mother was present at the jurisdiction hearing and represented by counsel. Rule 5.534(g)(1) requires the court to advise a parent of the right to assert the privilege against self-incrimination. Mother did not testify at the hearing, so we do not perceive any prejudice from a failure to advise Mother of the risks should she testify, and of her right not to do so if it would incriminate her.

The remainder of Mother's claims are much more in the nature of ineffective assistance of counsel complaints rather than due process violations. Rule 5.534(g)(1) requires the court to advise a parent of the right to present evidence. Mother was advised in writing multiple times before the jurisdiction hearing of her right to present evidence at the jurisdiction hearing in the

notices for the hearing; the court's failure to repeat this advisement was therefore not prejudicial.[3]  Additionally, the court explained at the commencement of the jurisdiction hearing that it would "be a trial as you have discussed with your attorney," meaning a contested proceeding, and Mother in fact introduced evidence at the hearing.  Mother now asserts she also "could" have testified on her own behalf.  Putting aside any tactical reasons her counsel may have had for not putting Mother on the stand, we fail to see on the record before us how testimony from Mother had the potential to change the outcome of the hearing.  Mother's statements denying any physical abuse of Ke.

---

[3] Mother filed a separate appeal (B318678) from the denial of a section 388 petition she filed in propria person in January 2022; that section 388 petition asserted she received ineffective assistance of counsel and that the court "sustained a perjured petition without jurisdiction based on denial of due process."  As part of the section 388 petition, Mother filed a declaration stating she did not discover until "mid 2021 that she had due process rights to an evidentiary hearing to cross examine the social worker and present evidence."  We appointed counsel for Mother, who filed a brief pursuant to *In re Phoenix H*. (2009) 47 Cal.4th 835.  The appeal was dismissed on February 24, 2023, after Mother failed to personally submit any appellate contentions for court consideration.  Although we granted Mother's request to take judicial notice of the record in B318678, that does not mean we take judicial notice of the truth of the factual statements made in Mother's section 388 petition.  (E.g., *Bach v. McNelis* (1989) 207 Cal.App.3d 852, 865 [courts "may not judicially notice the truth of assertions in declarations or affidavits filed in court proceedings"].)  We accordingly do not accept Mother's assertions as true when weighing other record evidence such as the multiple notices of hearing sent to Mother that explained she had a right to a jurisdiction hearing at which she could present evidence.

or any substance abuse were presented to the court in the exhibits admitted into evidence, and Mother's counsel relied on them to argue against those jurisdictional allegations. Mother does not articulate what else she would have said that was not already before the court. While Mother does not have the burden to show harm from the error, her failure to identify any such testimony is properly weighed when analyzing whether the error was harmless beyond a reasonable doubt.

The remaining advisements required by rule 5.534(g)(1) concern the right to subpoena witnesses, and to confront and cross-examine witnesses. (*Id*., subd. (g)(1)(B)-(C).) Mother suggests she "could" have called the preparer of the police report, the social worker that interviewed the children, and Ke. to examine (or cross-examine) them. With regard to the police report, Mother suggests she "could" have asked about the statement in the report about other unreported domestic violence incidents and potentially have excluded it as hearsay. However, Mother's appeal does not challenge the jurisdictional finding based on domestic violence rendering any such testimony irrelevant. With regard to the social worker and Ke., Mother fails to articulate what information she would have elicited beyond what was already before the court. Mother points to ambiguities in Ke.'s statements to the social worker about physical abuse perpetrated by Mother, but Ke.'s statements in this regard were already self-contradictory and Mother's counsel highlighted those inconsistencies when arguing against the jurisdictional allegations, noting that Ke.'s "interviews for the detention report and the jurisdiction report differ on key details."

We similarly find harmless any error in failing to comply with California Rules of Court, rule 5.682. The court did advise

18

Mother, as required by California Rules of Court, rule 5.682(a)(1) of her right to a hearing—it told Mother the jurisdiction hearing would "be a trial as you have discussed with your attorney." In addition, as noted above, Mother was advised in writing multiple times before the hearing that there would be a hearing on the jurisdictional allegations. The court did not specifically inquire whether Mother intended to admit or deny the allegations as required by California Rules of Court, rule 5.682(b); any such error was harmless beyond a reasonable doubt because the record makes clear Mother intended to, and did, deny the allegations of physically abusing Ke. and substance abuse. Failing to advise Mother that she had a right to do something that she nevertheless did anyway is clearly harmless error.

The remaining queries and findings requirements in California Rules of Court, rule 5.682 relate to situations where a parent admits, pleads no contest, or elects to submit the matter to the court. (See *id*., subds. (d), (e), and (f).) These portions of rule 5.682 do not apply here because Mother did not admit to physical abuse of Ke. or substance abuse, nor did she plead no contest or submit those issues for decision. We reject Mother's claim her trial counsel "de facto" submitted the matter for court decision. That is manifestly not what occurred; instead, a contested hearing took place. Mother (and Father) both introduced additional evidence beyond what DCFS offered. (See *In re Isabella F*. (2014) 226 Cal.App.4th 128, 136, fn. 8 [where parent submits additional evidence at jurisdiction hearing, she does not submit the matter to the court within the meaning of Cal. Rules of Court, rule 5.682].) Mother's counsel then argued against the jurisdictional allegations at issue in this appeal, asserting the court should dismiss them because DCFS failed to

19

meet its burden of proof on those allegations and explaining the reasons why counsel believed that was so.

## C. Substantial Evidence Supports the Challenged Jurisdictional Findings

Mother contends substantial evidence does not support the juvenile court's sustaining of the allegations she physically abused Ke. and that she had a substance abuse problem that posed a substantial risk of harm to the children.

### 1. *Standard of Review*

"Substantial evidence is relevant evidence which adequately supports a conclusion; it is evidence which is reasonable in nature, credible and of solid value." (*In re R.C.* (2012) 210 Cal.App.4th 930, 941.) Under the substantial evidence standard, we do not "evaluate the credibility of witnesses, reweigh the evidence, or resolve evidentiary conflicts." (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.) Rather, we must "draw all reasonable inferences in support of the findings, consider the record most favorably to the juvenile court's order, and affirm the order if supported by substantial evidence even if other evidence supports a contrary conclusion." (*Ibid.*) We " 'ordinarily *look[ ] only at the evidence supporting the successful party, and disregard[ ] the contrary showing.*' " (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1527, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)

### 2. *Substance Abuse*

The juvenile court asserted jurisdiction under section 300, subdivision (b)(1) based on Mother's alcohol and marijuana use. That statute authorizes dependency jurisdiction where "[t]he child has suffered, or there is a substantial risk that the child will

suffer, serious physical harm or illness, as a result of" "[t]he failure or inability of the child's parent . . . to adequately supervise or protect the child" or by "[t]he inability of the parent . . . to provide regular care for the child due to the parent's . . . substance abuse." (*Id.*, subds. (b)(1)(A) & (D).) "Although 'the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm' [citation], the court may nevertheless consider past events when determining whether a child presently needs the juvenile court's protection. [Citations.] A parent's past conduct is a good predictor of future behavior. [Citation.] 'Facts supporting allegations that a child is one described by section 300 are cumulative.' [Citation.] Thus, the court 'must consider all the circumstances affecting the child, wherever they occur.' [Citation.]" (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.)

During the October 2019 domestic violence incident, law enforcement documented that Mother was "extremely intoxicated." Video taken by Father during the incident showed the same thing.[4] Father stated that Mother was drunk during the altercation, that he witnessed Mother drinking tequila before matters escalated, and that he found a container with liquor that Mother had been drinking from during the day. Although he later made different statements, soon after the October 2019 incident Ke. said he witnessed Mother take three shots of an unknown liquid and smoke marijuana on the day of the incident. Ka. also gave contradictory statements, but one stated she saw

---

[4] This video recording is not in the appellate record. However, as noted above Mother acknowledged to DCFS that the video showed her intoxicated.

Mother take a shot of Hennessey and vodka before the altercation. A paternal uncle indicated Mother became belligerent and argumentative whenever she drank alcohol. Maternal grandmother said Mother used marijuana in the past.

The evidence shows Mother failed to take responsibility for her alcohol and marijuana consumption, and one may draw a reasonable inference from Mother's denials that she failed to recognize she had a substance abuse problem. Mother's claim to only have had one or two glasses of wine cannot be squared with evidence such as the video showing her level of intoxication on October 13, 2019. Additionally, Father denied there was even any wine in the home. Mother denied any marijuana use despite maternal grandmother and Ke. saying Mother had used it. In short, it was reasonable for the juvenile court to conclude Mother was not telling the truth about the potency of the alcohol she was drinking, the amount she drank, when she drank, or her marijuana consumption. When parents minimize their substance intake and fail to accept responsibility for it, a court may justifiably conclude a parent's alcohol and/or drug use pose a continuing and future risk to children. (*In re M.R.* (2017) 8 Cal.App.5th 101, 109-110.)

The October 2019 incident further demonstrated the risk to the children from Mother's alcohol and drug consumption, given the domestic violence that occurred after Mother consumed hard liquor and marijuana to the point of inebriation. One family member observed Mother on other occasions to have been extremely belligerent while drinking. Mother's frankly absurd claim that she trashed the television and computers in the home only because she could not find her glasses, and not because she was intoxicated, further demonstrates her lack of insight and the

22

potential danger her substance abuse posed to the children. Mother's alcohol and drug use, which the evidence showed was more extensive than she was willing to acknowledge, when combined with Mother's demeanor when intoxicated, thus posed a substantial risk that Ke. and Ka. would suffer serious physical harm as a result of Mother's inability to adequately supervise and protect the children, and her inability to provide regular care due to her substance abuse. (§ 300, subd. (b)(1)(A) & (D).) The juvenile court "need not wait until a child is seriously abused or injured to assume jurisdiction" and take the necessary steps to protect the child from the risk of harm. (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383.) " 'The purpose of dependency proceedings is to prevent risk, not ignore it.' [Citation.]" (*Jonathon L. v. Superior Court* (2008) 165 Cal.App.4th 1074, 1104.)

        3.    *Physical Abuse of Ke.*

The juvenile court asserted jurisdiction under section 300, subdivision (a), based on physical abuse of Ke. by Mother. That statute provides for jurisdiction where "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian. For purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian that indicate the child is at risk of serious physical harm. For purposes of this subdivision, 'serious physical harm' does not include reasonable and age-appropriate spanking

23

to the buttocks if there is no evidence of serious physical injury." (*Ibid.*)

Mother and Ke. both stated that when Ke. was younger, Mother hit him with a belt. Mother said it was a form of spanking, while Ke. said he was hit "anywhere" on his body. Ke. said these "whoopings" occurred approximately three times a month, and Mother left bruises that lasted for about two days. The juvenile court was entitled to discount Ke.'s later statements to the extent they were contradictory. It appears that Mother ceased any physical discipline of Ke. harsh enough to leave marks several years ago. Mother did, however, recently threaten to hit Ke. with a belt although she denied following through on that threat.

This history (including past hittings with a belt harsh enough to leave bruises)—especially when combined with the evidence of Mother's loss of control while intoxicated including belligerence and physical aggression, and the reasonable inference that Mother was drinking stronger liquor than she claimed more often than she claimed—are substantial evidence that Ke. was at substantial risk of serious future physical injury from Mother as required by section 300, subdivision (a) based on her past physical abuse of him. To the extent Mother argues she was only exercising her parental right of discipline when she struck Ke., that right does not extend to excessive punishment such as hitting a child with a belt "anywhere" on his body hard enough to leave bruises for several days. (*In re D.M.* (2015) 242 Cal.App.4th 634, 641.)

## DISPOSITION

The jurisdictional orders are affirmed.

NOT TO BE PUBLISHED

                                WEINGART, J.


We concur:


      CHANEY, J.


      BENDIX, Acting P. J.